(No. 21344.—

HENRY W. NIEMANN, Appellee, *vs.* THE SECURITY BENE-
FIT ASSOCIATION, Appellant.

*Opinion filed October 22, 1932—Rehearing denied Dec. 8, 1932.*

TERRY, GUELTIG & POWELL, A. W. FULTON, and Jo-
SEPH F. SHEEN, for appellant.

WESLEY LUEDERS, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellee, Henry W. Niemann, the beneficiary named in
a benefit certificate issued by appellant, the Security Benefit
Association, a mutual benefit society, on the life of Anna
M. C. Niemann, the wife of appellee, recovered a judgment
for $1000 and costs against appellant in a suit on said bene-
fit certificate in the circuit court of Madison county. The
Appellate Court for the Fourth District affirmed the judg-
ment and allowed a certificate of importance and an appeal
to this court.

Appellant is a mutual benefit society having its home
office at Topeka, Kansas, and having various local councils
in this State, one of which is located at Granite City. On
or about April 9, 1928, the insured, Anna M. C. Niemann,
the wife of appellee, signed an application for membership
in the Granite City council of appellant and a benefit cer-
tificate of $1000. The application contained a large num-
ber of questions as to the health and family history of the

insured. The answers to the questions in the application were written therein by Dr. G. B. M. Erwin, a medical examiner for the appellant, and the application was then signed by the insured. The benefit certificate was issued under date of April 11, 1928, and was delivered to the insured on or about April 16, 1928, by J. R. DeBow, the district manager of appellant. Appellee was named as beneficiary in the benefit certificate. The insured died of chronic nephritis on August 26, 1928. Proof of death was duly made by appellee and payment on the benefit certificate to him was refused by appellant.

The amended declaration of appellee consisted of the common counts and a special count, in which the benefit certificate was set out and declared on and in which it was alleged that premiums due on the certificate were paid to appellant and were accepted by it with full knowledge that the benefit certificate had not been signed by the insured and that the insured was not in good health. Appellant filed a plea of the general issue and four special pleas. In the first special plea a by-law of appellant was set out which provides that a "beneficiary certificate shall not become effective until manually delivered to the applicant while the applicant is in good health and the assessment and dues for the month in which the certificate is delivered have been paid and said beneficiary certificate signed by the applicant while in good health," and it was alleged that the insured was not in good health when the benefit certificate was delivered. In the second special plea it was alleged that the benefit certificate was obtained by false representations of the insured, who by the application for the certificate warranted that she was in sound physical and mental condition, when, as a matter of fact, on the date of the application she was not in a sound physical condition of health. In the third special plea it was alleged that by the application signed by the insured she represented and warranted that she had never been an inmate of any asylum, sanitarium

or hospital, when, as a matter of fact, she had been an inmate of a sanitarium or hospital for care or treatment on account of personal physical ailments. In the fourth special plea it was alleged that by the application signed by the insured she represented and warranted that she had not been under the care of or consulted any physician or surgeon within five years, when, as a matter of fact, she had within five years preceding the making of the application been under the care of and consulted a physician and surgeon. By replications to these special pleas appellee alleged that the benefit certificate was not fraudulently obtained, but that it was delivered to insured by appellant with full knowledge that she was not in good health, had been an inmate of a sanitarium or hospital for treatment for certain physical ailments and had been under the care of a physician or surgeon for treatment for a certain physical ailment within the five years preceding the making of the application, and that premiums on the benefit certificate were accepted from the insured by appellant with full knowledge that the insured was not in good health when the policy was delivered to her.

The application of the insured for the benefit certificate contained questions No. 14 and No. 16, as follows: "Have you ever been an inmate of any asylum, sanitarium or hospital?" "Have you been under the care of or consulted any physician, surgeon or practitioner of any school concerning yourself within the past five years?" The answer to each of these questions as written in the application was "No." The application above the signature of the insured contains the following: "I hereby warrant that no person except the medical examiner and myself were present when this application was being filled out; that I verify the answers to questions 8 to 21, inclusive, as written, and the same are true and correct." The application above the signature of the insured concludes with the following: "As a consideration for the acceptance of this application and

the issuance to me of the beneficiary certificate by the Security Benefit Association, I warrant that the foregoing answers and statements are true, full and correct, and I agree that said answers and statements shall be held to be warranties. I further agree, if accepted as a member of the order, that this application shall be considered a part of my beneficiary certificate and that I will be bound and my membership contract governed in all respects by the constitution and laws of the Security Benefit Association. * * * As a further consideration for the acceptance of this application and issuance of a beneficiary certificate to me, I warrant that I am now in sound physical and mental condition of health."

The benefit certificate provides that it was issued in "consideration of the statements, answers and agreements in the application of the member, which by this contract are made warranties;" that the certificate, "together with the charter and constitution and laws of the society * * * and the application for membership and medical examination signed by the member, * * * shall constitute the agreement between the member and the society;" that the "certificate shall not be in force and effect until all the requirements of the association's laws have been fulfilled, the required assessments paid and the certificate signed by the applicant in person during the applicant's good health." At the bottom of the certificate appears the following: "This certificate delivered to me the 16th day of April, 1928, and accepted subject to all provisions and conditions set forth in this certificate and the constitution and laws of the Security Benefit Association." Underneath this is a line for signature, under which is the word "Member." There is no signature on this line, but to the left of and below the line, under the word "Witness," appears the signature "J. F. DeBow." There was also introduced in evidence section 96 of the by-laws of appellant, which reads, in part, as follows: "Such beneficiary certificate shall not become

effective until manually delivered to the applicant while the applicant is in good health and the assessment of dues for the month in which the certificate is delivered have been paid and said beneficiary certificate signed by the applicant while in good health: Provided, that under no circumstances shall any officer of the council, or any member of the association or person whomsoever, deliver a beneficiary certificate to or collect an assessment and dues thereon from any applicant who is not in good health. A certificate delivered in violation of these provisions shall be void and of no effect."

The testimony of appellee was in substance as follows: Before his wife made the application on which the benefit certificate was issued, a Mrs. McCormick had been soliciting him and his wife to join the appellant society. On or about April 9, 1928, J. R. DeBow, district manager of appellant, and Dr. Erwin, came to witness' home in Granite City to take his wife's application. Witness, his wife, his daughter-in-law and Mrs. Fred Reiske were present. Dr. Erwin sat at a table or desk with the application before him. He and DeBow asked Mrs. Niemann questions, and as she answered them Dr. Erwin made entries on the application. Mrs. Niemann wrote no answers to any questions in the application. Dr. Erwin asked her the question, "Have you ever been an inmate of any asylum, sanitarium or hospital?" and she answered that she had been in Barnes' Hospital, in St. Louis, about a year before, for treatment for kidney trouble. He asked the question, "Have you ever been under the care of or consulted any physician, surgeon or practitioner of any school concerning yourself within the period of five years?" She answered that she had just come back from Collinsville, where she had been to see a doctor, and had medicine in her hand; that she had also consulted Dr. Boyce and Dr. Oatman, and had been treated by Dr. Caulk, of St. Louis, and that her ailment was kidney trouble. DeBow asked, "Mrs. Niemann, you are doing

your housework, ain't you?" She replied, "Yes." DeBow said, "That is fine." Either DeBow or Dr. Erwin asked the questions: "Have you ever applied for membership in any life insurance company, society or association and been rejected or action postponed?" "What company, society or association, and when?" Mrs. Niemann told them that she had been rejected by the Lutheran Association. Dr. Erwin did not make any physical examination of her that day or at any other time. He did not take her temperature or blood pressure. No other person made any physical examination of her. After all the questions in the application had been asked and were answered by Mrs. Niemann, Dr. Erwin laid the application on the table and asked her to sign it, and she did so without having read it or having had it read to her. After some further conversation DeBow got up and asked, "Mrs. Niemann, didn't you forget something?" Mrs. Niemann then handed to DeBow $2.50 as her initiation fee and said, "I am insured now?" and DeBow replied, "Yes, sir; if you die to-night your insurance is good." A few days later DeBow again came to witness' house and handed Mrs. Niemann the benefit certificate, saying, "Here is your policy, Mrs. Niemann, and I am ready to insure Henry." He did not tell her that there was anything further for her to do in regard to the policy. The premiums on the benefit certificate of $3.35 a month were paid thereafter until the death of Mrs. Niemann.

The testimony of appellee concerning the circumstances under which the application was made and the answers given by Mrs. Niemann to the questions asked of her was corroborated by the testimony of Mrs. Fred Reiske. Dr. Erwin, and DeBow, as witnesses for appellant, denied that the answers to the questions in the application as given by Mrs. Niemann were different from the answers written in the application. Other evidence for appellant showed that at the time the application was made Mrs. Niemann was, and had been for several years, afflicted with chronic ne-

phritis and hypertension. At the close of the evidence for appellee, and again at the close of all the evidence, the appellant made a motion for a directed verdict in its favor, and these motions were denied.

It is contended by appellant that in the absence of any artifice, trick or subterfuge to prevent the applicant reading the application the beneficiary is estopped from showing that the applicant did not read it before signing it and is bound by it even if it was not read by the applicant. In *Guter* v. *Security Benefit Ass'n,* 335 Ill. 174, a suit was brought on a benefit certificate issued by the appellant in this case, and the defense was that the answers to questions in the application were false and that the information in the application was warranted to be true. The trial court sustained an objection to evidence offered by the plaintiff to show that the answers to the questions in the application were written therein by the defendant's medical examiner; that true answers to the questions were given to the medical examiner by the applicant and that the application was signed by the applicant without having read it. This court held in that case that the trial court erred in sustaining the objection to the evidence offered because an insurer is not permitted to insist that statements in an application are warranties, the falsity of which forfeits the policy, where such statements are those of the agent of the insurer put into the application by him in lieu of the facts disclosed to him by the insured. The evidence for the appellee in the case now before us is to the effect that at the time her application was made the insured disclosed to the medical examiner and the district manager of the appellant the correct information as to her state of health and as to her having been in a hospital and under the care of various physicians for treatment. Since notice to the agent of an insurer, at the time an application for insurance is made, of facts material to the risk is notice to the insurer which will prevent it from insisting upon a forfeiture because of

such facts, there was no error committed in refusing the peremptory instruction for the appellant because the answers to questions in the application as written by the medical examiner were false. *Royal Neighbors of America* v. *Boman,* 177 Ill. 27.

It is contended by appellant that the provision of the by-laws of the appellant, which was made a part of the contract between the parties, that the certificate should not be in force and effect until delivered to and signed by the insured while in good health was a condition precedent to any liability by the appellant on the certificate and a condition that was not waived, because the by-laws of appellant expressly prohibited any officer, council or member of appellant from delivering a benefit certificate to, or collecting any assessment or dues thereon from, an applicant who was not in good health. A subordinate lodge or local council of a mutual benefit society is the agent of the supreme lodge or council notwithstanding declarations of the by-laws of the lodge or society to the contrary, and a restriction upon the power of an agent to waive any of the conditions of a contract of the society or upon the manner of their waiver is itself a condition which may be waived. (*Dromgold* v. *Royal Neighbors,* 261 Ill. 60; *Zeman* v. *North American Union,* 263 id. 304; *Guter* v. *Security Benefit Ass'n, supra.*) A general agent clothed with power to solicit insurance, receive the application and forward it to the company, receive and deliver the policy and collect the premium, has power to waive a condition of the policy notwithstanding that power is negatived by provisions in the policy and his contract of employment. (*Hancock Life Ins. Co.* v. *Schlink,* 175 Ill. 284.) In this case there is no question that DeBow, the district manager in charge of local councils of appellant in Madison and St. Clair counties, had authority to solicit persons to become members of the society and take out benefit certificates, to take their applications for such certificates and

forward such applications to appellant's head office, and to receive and deliver to applicants such certificates and receive the assessments or dues or premiums thereon. There is no question but that he did deliver the benefit certificate to Mrs. Niemann and receive from her the dues or assessment on the certificate for the current month without having had her sign the certificate and knowing that she had not done so. The evidence for appellee tended to show that DeBow, at the time he delivered the certificate, knew she was not in good health. There is ample proof in the record that the condition of the policy that it should not go into effect until delivered to and signed by the insured while in good health was waived by appellant, and the court did not err in denying the motion for an instructed verdict on that ground.

Appellant also contends that the evidence for appellee, if taken as true, establishes that there was collusion between the insured and appellant's agents to practice a fraud on appellant in procuring the benefit certificate to be issued. No plea was filed by appellant setting up the defense of collusion between the insured and appellant's agents in making the application on which the certificate was issued, and it appears from the record that appellant did not try the case on any such theory in the trial court. Besides, the evidence in this case does not conclusively establish that there was collusion between the insured and appellant's agents to practice a fraud on appellant in procuring the benefit certificate to be issued. Had an issue been made on the question of collusion between the insured and appellant's agents the jury would have been warranted in finding against appellant on that issue.

No instructions were given to the jury at the request of appellee. Appellant submitted seven instructions, four of which were given and three refused. The first of the refused instructions would have informed the jury that if the insured answered "No" to the question in the application,

"Have you ever been an inmate of a sanitarium, asylum or hospital?" and such answer was false, and "the defendant or its agents had no knowledge at the time of the issuance of said policy that the answer to said question was untrue," then they should find for the defendant. The second refused instruction is substantially the same as the first, except that it sets out the question as to whether the applicant had been under the care of or consulted a physician or surgeon, instead of the question referred to in the first refused instruction. Both of these instructions were properly refused because they told the jury that if appellant or its agents had no knowledge of the falsity of the answers the verdict should be for appellant. The words of the instructions are, the "defendant or its agents" and not the "defendant and its agents," and the jury might have interpreted these instructions as meaning that the knowledge of appellant's agents as to the falsity of the answer did not bind appellant unless such information was communicated to its home office. The third refused instruction was, that if the policy of insurance sued on was issued upon an application in which the insured warranted that she was in good health, when, as a matter of fact, she was not in good health, then there could be no recovery unless appellant or its agents knew of the insured's unsound physical condition at the time the policy was issued. There was no reversible error in refusing this instruction, because the first instruction given to the jury instructed them to the same effect as they would have been instructed by the third refused instruction. The first instruction given informed the jury that unless they believed from the evidence that appellant or its authorized agents had knowledge that the applicant was not in good health at the time of the delivery of the policy then appellee could not recover.

The judgment of the Appellate Court for the Fourth District is affirmed.

*Judgment affirmed.*