(No. 34797.— )

HARRY CAMPBELL, Guardian, Appellant, *vs.* THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellee.

*Opinion filed November 26, 1958—Rehearing denied Jan. 22, 1959.*

Askow and Stevens, of Chicago, for appellant.

Peterson, Lowry, Rall, Barber & Ross, C. Malcolm Moss, and Walter W. Siebert, all of Chicago, (Owen Rall, William A. Cannon, and Herbert C. Loth, Jr., of counsel,) for appellee.

Mr. Justice Schaefer delivered the opinion of the court:

We allowed leave to appeal in this case, primarily to determine the proper construction of section 154 of the Insurance Code, which deals with the effect of misrepresentation by an insured in his application for insurance. Ill. Rev. Stat. 1957, chap. 73, par. 766.

The defendant issued to Lloyd J. Campbell two "Endowment at Age 65 Years" insurance policies upon his life. The first policy was issued on November 9, 1953, in the sum of $1,000, and the second on May 17, 1954, in the sum of $750. Campbell was then 42 years old. He died on July 6, 1954, before the policies became incontestable. The coroner's certificate stated that the cause of his death was coronary thrombosis. His minor son, Gerald, was the beneficiary, and by his guardian he instituted this action on the policies. There was a verdict and judgment of

$1,750 for the plaintiff. The Appellate Court reversed the judgment on the ground that a verdict should have been directed for the defendant on its affirmative defense of material misrepresentation. 16 Ill. App. 2d 65.

In his applications for the policies, dated respectively October 23, 1953, and May 12, 1954, the insured represented that he had not had any operation during the preceding ten years; that he had never been confined to a hospital and had never had an ulcer; that he had not lost any time from work during the preceding year because of illness, and that he had not been treated by a doctor during the preceding five years.

Undisputed evidence established that he had been hospitalized at Cook County Hospital from August 18, 1948, to September 18, 1948, with an abscessed peptic ulcer which required a two-stage surgical operation, a gastrojejunostomy, which connected the stomach to the small intestine in such a way as to bypass the duodenum, and a vagotomy which severed the vagus nerve. His work records showed that, while he had been in the employ of the same firm for 28 years, his absences from work were double the average of the other employees. Those records show three periods of absence on account of illness between September 7, 1953, and February 22, 1954. The first two of these absences each lasted three weeks, and the third lasted 33 days. On each occasion he was treated by a physician. These absences were due to a possible recurrent peptic ulcer or to gastrointestinal disturbances. Each of two physicians who examined him early in 1954 advised him to enter a hospital for further examination so that the cause of his illness could be determined. Neither physician found any evidence of an abnormal heart condition.

The question to be determined is the extent of the burden that an insurer must meet if it is to avoid liability upon a policy because of misrepresentation in connection with its issuance. Section 154 of the Insurance Code of

1937 provides in part that "No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive *or* materially affects either the acceptance of the risk or the hazard assumed by the company." (Ill. Rev. Stat. 1957, chap. 73, par. 766.) (Italics supplied.) The plaintiff contends that the italicized word "or" should be read "and," so that the defendant must show both the materiality of the misrepresentation and an actual intent to deceive if it is to avoid liability. The defendant contends that its burden is satisfied if it establishes either a material misrepresentation or an intent to deceive.

The trial court instructed the jury in accordance with plaintiff's view of the statute. There is support for such a construction. (*Hamberg* v. *Mutual Life Ins. Co. of New York,* 322 Ill. App. 138 (concurring opinion, p. 144); *Mid-States Ins. Co.* v. *Brandon,* 340 Ill. App. 470, 473; *La Penta* v. *Mutual Trust Life Ins. Co.* 4 Ill. App. 2d 60, 65.) But that construction was rejected, after a thoughtful appraisal of the Illinois decisions, in *Jesson* v. *Aetna Life Ins. Co.* (7th Cir. 1954) 209 F.2d 453, 455, and in *Weber* v. *John Hancock Mutual Life Ins. Co.* 267 Wis. 647 (1954), 66 N.W.2d 672, 676. It was rejected also by the court below, 16 Ill. App. 2d 65, with one judge dissenting.

On occasion the disjunctive "or" has been read as the conjunctive "and." (*People ex rel. Ocean Accident and Guarantee Corp.* v. *VanCleave,* 187 Ill. 125; *Ayers* v. *Chicago Title and Trust Co.* 187 Ill. 42, 56; *Boyles* v. *McMurphy,* 55 Ill. 236, 239.) Such a construction, however, is permissible only when a literal reading is inconsistent with an apparent legislative purpose. (*People ex rel. Fix* v. *Trustees of Northwestern College,* 322 Ill. 120, 124; *Voight* v. *Industrial Com.* 297 Ill. 109, 114.) It is argued here that the purpose of section 154 is to benefit the insured and not the insurer. And on that basis it is contended that the General Assembly could not have intended that a ma-

terial misrepresentation innocently made, or an immaterial but intentional misrepresentation, would defeat recovery.

Prior to the enactment of section 154 in 1937, the rules applied to warranties in insurance contracts were not the same as those applied to representations. A false warranty was given no effect unless it was incorporated into the insurance policy, but this requirement was not applied to misrepresentations. (*Anderson* v. *John Hancock Mutual Life Ins. Co.* 316 Ill. App. 338, 342.) A false warranty was ground for avoiding the policy regardless of its materiality or the belief of the insured as to its accuracy. (*Hancock* v. *Knights and Ladies of Security,* 303 Ill. 66, 73.) But only a material misrepresentation of fact had any effect upon the liability of the company. Opinions of the Appellate Court differed as to whether a showing of actual deceit on the part of the insured in making the misrepresentation was also required. (Compare *Joseph* v. *New York Life Ins. Co.* 219 Ill. App. 452, with *Tanner* v. *Prudential Ins. Co.* 283 Ill. App. 210.) This court had held that, at least in equity, a material misrepresentation would avoid the contract "even though made through mistake or in good faith." *Western and Southern Life Ins. Co.* v. *Tomasun,* 358 Ill. 496, 502.

The primary legislative purpose in enacting section 154 appears to have been to eliminate the rather refined distinctions that had been applied in determining the effect of false warranties and misrepresentations. "The section places representations and warranties, in policies issued since the passage of the Code, upon the same footing. It has restricted the rules heretofore applied to warranties and broadened those applied to representations." (The Illinois Insurance Code Annotated, 1939, p. 285.) The section requires both warranties and representations to be stated in the policy or attached to it, if they are to have any effect upon the insurer's liability. The uniform effect that it gives both to misrepresentations and to false warranties is a blend

of some of the ingredients of the rules theretofore separately applied to each. Similar statutes in other States have been held to express alternative rather than cumulative requirements. (*Prudential Ins. Co.* v. *Ashe,* 266 Mich. 667 (1934), 254 N.W. 243; *Sovereign Camp, W.O.W.* v. *Moore,* 232 Ala. 463 (1936), 168 So. 577; *Manelas* v. *National Accident & Health Ins. Co.* 89 N.H. 559 (1938), 2 A.2d 310; *New York Life Ins. Co.* v. *Fleck,* 73 N.D. 143 (1944), 12 N.W.2d 530.) We see no reason why section 154 should not be read as it is written, in the disjunctive.

In our opinion the Appellate Court correctly held that a verdict should have been directed for the defendant. The testimony of defendant's expert witness relating to the materiality of the misrepresentations to the acceptance of the risk was undisputed. That the insured did not die from the affliction with respect to which information was withheld does not affect the materiality of the misrepresentations. (*Weinstein* v. *Metropolitan Life Ins. Co.* 389 Ill. 571, 578-9.) Nor is it significant that none of the doctors testified to a positive diagnosis of a recurrent peptic ulcer. The point is that the insured, by withholding relevant information, prevented the insurer from appraising the risk on the basis of the facts as they existed.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*