John T. Oberg, Plaintiff, Counterdefendant and Appellant, v. John Hancock Mutual Life Insurance Company, a Corporation, Defendant, Counterplaintiff and Appellee.

Gen. No. 69–13.

Second District.

October 20, 1969.

Reno, Zahm, Folgate & Skolrood, of Rockford, for appellant.

Hyer, Gill, Brown and Remencius, of Rockford, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

Appeal is taken from a summary judgment entered in favor of the Insurance Company, denying a claim for $1,569 in major medical expenses.

The controlling issue is whether the Company can forfeit the contract for failure to include in the application for insurance certain prior medical history which was within the knowledge of the insurer's agent.

The complaint was filed within two years from the date of issuance so that the general incontestability clause did not become an issue. However, the Company alleged, as a separate defense, that the application which was attached to the policy contained the following clause:

> ". . . and provided that if any of the statements and answers set forth in Part A and Parts B, if any, of this application are not complete and true as though given at the time of such delivery and payment, the Company shall have the right to void the policy, subject to the Incontestability provision of the policy. III. Except as otherwise may be specifically provided in the policy, notice to or knowledge of any agent or medical examiner, whenever given, is not notice to or knowledge of the Company, and no agent or medical examiner is authorized to make or discharge contracts or waive or change any of the conditions or provisions of any application, policy or receipt, or to accept risks or pass upon insurability,"

and that in the application plaintiff was asked certain questions concerning his past medical history and made certain false statements and misrepresentations and failed to disclose information which materially affected the ac-

ceptance of the risk.[1] The Company also counterclaimed for rescission of the policy, offering to return the premiums paid.

Plaintiff admitted the allegations of the separate defense to the extent that he was asked the questions related, but further alleged that he, at no time, filled in the personal health application and that it was filled in by Herbert C. Liedberg, agent of the John Hancock Company, who had knowledge of the omitted medical history and who stated to plaintiff that the omissions were immaterial.

---

[1] "C. That in plaintiff's application for insurance, plaintiff was asked the following questions, to wit:

"16. Has any proposed covered family member ever consulted or been treated by any physician or practioner (sic) for, or had known indication of: f. Indigestion or ulcers, colitis or diarrhea, rectal disease or hemorrhoids, hernia, gall bladder or liver disease, or jaundice? k. Eye or ear or speech impairment? m. Disease or disorder of stomach or intestines?

" . . .

"20. Has any proposed covered family member ever: c. Had x-ray, electrocardiogram, blood or other medical studies?

"21. Has any proposed covered family member during the last five years, other than as stated in connection with your other answers, consulted, been treated or examined by any physician or practioner (sic); or been under observation or treatment in any hospital, clinic or similar institution?

"The plaintiff answered question 16f. in the affirmative, but in the paragraph for disclosure of the condition and giving details concerning the same, the plaintiff listed a rectal operation, but failed to disclose that he had suffered a massive upper gastrointestinal hemorrhage and had been confined in Rockford Memorial Hospital from January 2nd to January 14th, 1965, under the care of physicians and surgeons as a result of such condition.

"Plaintiff answered questions 16k., 16m., 20c. and 21 all in the negative. Plaintiff had in fact for several years prior to March 3, 1966, the date of the application, suffered from a cataract of the left eye and otosclerosis resulting in deafness in the left ear, and during his confinement in Rockford Memorial Hospital from January 2nd to and including January 14, 1965, numerous x-rays, blood tests and other medical studies were made."

154

The order for summary judgment on the motion of the Insurance Company followed.

Plaintiff relies principally on the decision of this court in Asselborn v. State Farm Life Ins. Co., 1 Ill App 2d 104, 116 NE2d 902 (1954) (which, in turn, cites as its basis, Security Trust Co. v. Tarpey, 182 Ill 52, 54 NE 1041 (1899)) as authority for the proposition that an insurance company cannot insist on a forfeiture of a policy for a cause which was within the knowledge of its agent at the time the policy was issued. Defendant answers this argument by reference to the exculpatory clause in the present policy which was not present in the Asselborn and Tarpey cases. Defendant cites authorities to the effect that contract provisions may negative a claim that the insurance company has waived a lawful provision of its contract and may avoid the charge that it is estopped to assert limitation of the agent's authority.

In Asselborn v. State Farm Life Ins. Co., supra, a judgment entered on a jury verdict for the beneficiary of a deceased insured was affirmed. The evidence was overwhelming that the insured did not know that he had a heart condition and, therefore, could not have intended to deceive the company within the purview of section 154 of the Illinois Insurance Code.[2] It was significant also in the court's opinion, that the company's medical examiners had familiarized themselves with the insured's E.K.G.'s and had pronounced him normal and "a first class risk"; and that the discrepancies and incomplete answers in the examiner's reports were evident to the

---

[2] Ill Rev Stats 1967, c 73, § 766.

766. Sec 154. Misrepresentations and False Warranties.) . . . No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company.

company, which made no further inquiry. The court concluded, page 116:

"In Security Trust Co. v. Tarpey, 182 Ill 52, at page 59, it is said: 'It has been the rule of this court that an insurance company cannot insist upon the forfeiture of a policy for a cause which was within the knowledge of its agent at the time the policy was issued.' In the instant case, our review of the record convinces us that the agents of appellant knew as much or more about the physical condition of Joseph C. Asselborn at the time he made his application for this policy as Mr. Asselborn himself. The judgment of the trial court is in accordance with the facts as disclosed by this record and the applicable law, and that judgment will be affirmed."

In Security Trust Co. v. Tarpey, supra, the company sought to avoid a policy for alleged false representations that the deceased had made no application to other companies and that he stated his health was good when, in fact, he had consumption. In affirming a judgment for the beneficiary, the court held that no question of fraud or warranty was present since the facts indicated that the company solicited risks rejected by other companies and had before it a copy of the rejection by another company; and, in addition, the medical report indicated a probability of tuberculosis, but that the facts showed that if the doctor concluded that the insured had the disease he did not so inform him.

Plaintiff argues that the rule of the above cases should apply as well to the application containing the clause exculpating the company from notice of facts within its agent's knowledge in the inception of the contract.

Defendant cites a number of Illinois cases for the general rule that parties may incorporate lawful provisions

in an insurance contract and the courts will then enforce the contract as made (e. g., Moscov v. The Mutual Life Ins. Co. of New York, 387 Ill 378, 56 NE2d 399 (1944) ; Western & Southern Life Ins. Co. v. Tomasun, 358 Ill 496, 193 NE 451 (1934) ; and Pioneer Life Ins. Co. v. Alliance Life Ins. Co., 374 Ill 576, 30 NE2d 66 (1940)). Only the Western & Southern Life Insurance Co. case deals with misrepresentations, and those by the insured directly. The court, in fact, distinguishes the Security Trust Co. v. Tarpey, supra, and a number of similar cases on the ground that these involved the rule that an insurance company cannot insist upon a forfeiture for a cause of which it had knowledge—or which its agent had knowledge—when the policy issued.

These cases do not reach the precise question whether, granted that a company may insert any lawful provision in its contract, it may yet be estopped to assert such provision or be said to have waived it. Nor do they deal with the effect of a clause purporting to shield the company from knowledge of the facts known to the agent at the inception of the contract but not transmitted to the principal.

On the latter point, in Guter v. Security Benefit Ass'n, 335 Ill 174, 166 NE 521 (1929) the insured, under a mutual benefit life insurance policy, warranted that he was in sound physical condition when there was evidence he knew he had tuberculosis, and that his parents had died of that disease. The beneficiary offered proof in rebuttal that the insured had told the medical examiner for the company all of the relevant facts and that the latter wrote down the answers. The lower court refused the offer, relying on the terms of the policy which stated, in addition to the warranty of sound physical condition, a warranty that all the answers given in the application were true and verified. In addition, defendant had intro-

duced bylaws of the association which stated that no officer of a local lodge had authority to waive any contract provision; and that notice to a subordinate lodge should not be considered notice to the insurer. The policy incorporated such bylaws. In reversing the lower court the Illinois Supreme Court stated, on pages 179–180:

> "A subordinate lodge or council of a mutual benefit society is the agent of the supreme lodge or council, notwithstanding the declarations of the by-laws of the society to the contrary, and a restriction upon the power of an agent of a benefit society to waive any of the conditions of the contract or upon the manner of their waiver is a condition which may itself be waived by a mutual benefit association. (Dromgold v. Royal Neighbors, 261 Ill 60; Zeman v. North American Union, 263 id. 304.) The rule as to what constitutes a warranty in an application for a mutual benefit certificate differs where the application is filled out and the questions answered by the insured and where the questions are asked and the application is filled out by an agent of the society, and in the former case, where the answers are false and no information as to their falsity is given to the agent, the benefit certificate may be declared void by the society. This rule, however, does not apply to the latter case. Notice to the agent, at the time of the application for the insurance, of facts material to the risk is notice to the insurer, and will prevent it from insisting upon a forfeiture for causes within such agent's knowledge. The insurer is not permitted to insist that statements in an application are warranties, the falsity of which forfeits the policy, where such statements are those of the agent, put in by him in lieu of the facts disclosed to him by the insured. (Provident Life Ins. Co. v. Cannon, 201 Ill 260; Phenix Ins. Co. v. Hart, 149 id. 513;

Home Ins. Co. v. Mendenhall, 164 id. 458; Phenix Ins. Co. v. Stocks, 149 id. 319; Royal Neighbors v. Boman, 177 id. 27; Teutonia Life Ins. Co. v. Beck, 74 id. 165.)"

See also Niemann v. Security Benefit Ass'n, 350 Ill 308, 315, 183 NE 223 (1932).

In Royal Neighbors of America v. Boman, 177 Ill 27, 52 NE 264 (1898), the court stated on page 32:

"Where one makes true answers to the questions in an application for insurance, the validity of the insurance is not affected by the falsity of the answers inserted by the agent of the company, even though the application contained a stipulation that the agent took the application as the agent of the insured. Bernard v. United Life Ins. Co., 39 NY Supp 356; Clubb v. Am. Acc. Co. of Louisville, 97 Ga 502; Insurance Co. v. Wilkinson, 13 Wall 222; Andes Ins. Co. v. Fish, 71 Ill 620."

In Whitmore v. Mutual Life Ins. Co. of New York, 122 Vt 328, 173 A2d 584, 589 (1961), the Vermont Supreme Court applied Illinois law, citing Royal Neighbors of America v. Boman, supra, and Niemann v. Security Benefit Ass'n, supra, and held that where the insured answered questions asked of him by the insurance agent truthfully, and false answers were placed on the application by the agent, the insurer was estopped to deny liability because of alleged fraud of the insured even where the application contained a stipulation that the agent takes the application as the agent of the insured.[3]

---

[3] There is a suggestion in the case that such exculpatory clause is invalid, but we take note of the provisions of Ill Rev Stats 1967, c 73, § 837(e), which state such clauses to be invalid in *life* insurance policies issued subsequent to 1937. There is no similar provision in the Insurance Code with respect to health and accident insurance. However, the Illinois cases cited involving life insurance were decided prior to the enactment of the provision in the Insurance Code of 1937.

In Lumbermen's Mut. Ins. Co. v. Bell, 166 Ill 400, 405, 45 NE 130 (1897), the court announced the rule of law that whether the brokers were the agents of the assured is to be determined from all the evidence bearing on that subject, and not merely from the statement in the policy to the effect that the brokers were the agents of the assured.

In a parallel situation, in which it is set forth in the application that the medical examiner is the agent of the insured, the Illinois cases are aligned with the majority rule in the various jurisdictions holding that the examiner will not be regarded as the agent of the insured even though it is so stipulated in the provisions of such application or policy. 94 ALR2d 1389, 1402–4, Annotated.

We do not here deal with the case in which an insured is acquainted with circumstances plainly indicating that the agent will not advise his principal. See Jacobson v. Equitable Life Assurance Society of U. S., 381 F2d 955, 960–1, (CCA 7th 1967), applying Illinois law.

Defendant has cited a number of cases from other jurisdictions which have held an insured bound by false answers on the application after questions and answers have been read to him, including the question whether he understood that the company is not bound by any knowledge of or statement made by or to any agent unless set forth in the application. (E. g., Benson v. Bankers Life and Casualty Co., 147 Colo 175, 362 P2d 1039, 1041–2 (1961) ; Haman v. Pyramid Life Ins. Co. (Mo), 347 SW2d 449, 454 (1961) ; American Standard Life Ins. Co. v. Denwitty (Tex), 256 SW2d 864, 868 (1953) ; Employers Mut. Fire Ins. Co. v. Cunningham (Ky), 253 SW 2d 393, 394 (1952).) These authorities are either inconsistent with the rulings which have applied Illinois law, or involve different circumstances.

Probably the weight of modern authority sustains the rule that when an applicant gives correct oral answers which are incorrectly recorded by an authorized

160

agent, the insurer cannot rely upon the falsity of such answers to avoid the policy. See 148 ALR 507, Annotated; John Hancock Mutual Life Ins. Co. v. Schwarzer, 354 Mass 327, 237 NE2d 50 (1968); Schneider v. Washington Nat. Ins. Co., 200 Kan 380, 437 P2d 798, 810–12 (1968); Corrigan v. Firemen's Fund Ins. Co., 180 Neb 13, 141 NW2d 170, 176 (1966); Middlebrook v. Bankers Life & Casualty Co., 126 Vt 432, 234 A2d 346, 348 (1967); Saunders v. Allstate Ins. Co., 168 Ohio St 55, 151 NE2d 1, 6 (1958); Pannunzio v. Monumental Life Ins. Co., 168 Ohio St 95, 151 NE2d 545, 552 (1958), for example.

We, therefore, find that the trial court was in error in entering the summary judgment. On the court's theory of the law applicable to the insurance contract, there were no facts alleged (and admitted for pleading purposes to be true) which could bind the insurer because the information, while allegedly known to the agent, was not transmitted to his principal.

However, on the view that we have taken of the law there were a number of material issues of fact unresolved and undetermined. In its reply to the answer to the separate affirmative defense, the defendant denied that the agent, Liedberg, had actual knowledge of the rectal operation, massive upper gastrointestinal hemorrhage, cataract and otosclerosis, or plaintiff's confinement in Rockford Memorial Hospital from January 2nd to and including January 14th, 1965. Further, defendant denied that Liedberg represented to plaintiff that the omission of the facts concerning such condition, illness and confinement were immaterial to the risk.

■■ We have often held that the purpose of a summary judgment is not to try an issue of fact, but rather to determine if one exists. In the case at bar, a dispute existed with reference to the foregoing material facts. Summary judgment should not have been entered. Lumbermens Mut. Cas. Co. v. Poths, 104 Ill App2d 80, 92, 243 NE2d 40 (1968).

We reverse and remand with instructions to vacate the order granting the summary judgment and to conduct a trial on the merits.

Reversed and remanded with instructions.

MORAN, P. J. and DAVIS, J., concur.