Tony Tesluk, as Assignee of Donna Piegare, Plaintiff-Appellee, v. Metropolitan Life Insurance Company, a Corporation, Defendant-Appellant.

Gen. No. 54,472.

First District, First Division.

September 21, 1970.

Peterson, Lowry, Rall, Barber & Ross, of Chicago (Owen Rall and Michael M. Lane, of counsel), for appellant.

Knouff & Ley, of Chicago (Anthony J. Pauletto and Gerald J. Smoller, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

This is an action to recover life insurance and accidental death benefits under a plan of group insurance covering Robert A. Tesluk, who died of accidental causes on November 25, 1967. The plaintiff, Tony Tesluk, as assignee of Donna Piegare, the named beneficiary of the policy, filed suit against the insurer, Metropolitan Life Insurance Company. The jury rendered a verdict for the plaintiff upon which the court entered judgment and from which this appeal is taken.

In July, 1967, Tony Tesluk operated a paint and wallpaper store and employed his son, Robert A. Tesluk, who was 21 years of age, and one Joseph Vogenthaler. After a solicitation by a Metropolitan agent, applications for the insurance were executed by the three, and a group insurance policy was issued.

Part C of Robert A. Tesluk's signed application contained the following pertinent information:

6. Have you (or any other said family member) received treatment, attention, or advice from any physician or other practitioner for, or been told by any physician or other practitioner that you (or said family member) had:

|  | Yes | No |
|---|---|---|
| (d) Epilepsy, paralysis, dizziness or any mental or nervous disorder? | [ ] | [x] |

7. During the past 5 years, have you (or any other said family member) had any other diseases, ailments, or injuries not revealed elsewhere on this application for which there was treatment, examination, or advice by or under the direction of a physician or other practitioner, or at a clinic, hospital, dispensary or sanitorium?

| Yes | No |
|---|---|
| [x] | [ ] |

8. If any of questions 3–7 is answered Yes, give full details, including (if applicable)

| Question | Name | Dates | Ailment or Treatment | Duration | Name of Physician or other practitioner or name of Clinic or Hospital, etc. |
|---|---|---|---|---|---|
| 7. | Robert | 11–66 | Hemorrhoids | 4 wks. | Ireland Army Hospital, Fort Knox, Ky. |

Prior to this application, Robert A. Tesluk had a six-year history of mental disorder. On June 19, 1961, he was admitted to the Cook County Hospital Mental Health Clinic on a doctor's diagnosis that he had acute psychotic reaction. Plaintiff, Tony Tesluk, then signed a petition for his son's commitment as a person in need of mental treatment. The subsequent order recited that he was a mentally ill person incapable of managing his own estate, and he was committed to his father's custody. On March 14, 1962, he was restored to the legal status of a sane person. In April, 1962, he was admitted to a hospital for mental treatment and then again admitted in September of that year. In February, 1963, a doctor diagnosed him as a mentally ill person with need of immediate restraint, and he was admitted to a mental health clinic upon his father's petition for commitment. Upon examination under court order, two doctors found him to be a mentally ill person, and he was committed to a research hospital. On June 2, 1964, his father again petitioned for commitment. The physicians appointed by the court found he was suffering from schizophrenic reaction of the chronic undifferential type, and he was committed to the Elgin State Hospital. This same procedure was followed in April, 1966, when Robert Tesluk was again admitted to the Elgin State Hospital. He was released on a conditional discharge on June 29, 1966. On July 1, 1967, he executed the application to Metropolitan under the group plan being applied for by Tony Tesluk. Elgin State Hospital granted him an absolute discharge on July 11, 1967.

Hunter A. Jopes testified that as an insurance consultant for Metropolitan, he visited Tony Tesluk's shop and solicited a group insurance policy. He returned there on two occasions, and nothing was ever said to him about

the ill health of any of the three employees. He said he asked Robert Tesluk the questions appearing on Part C, sections 6, 7 and 8 of the application and put down Robert's answers before Robert signed the application. Robert told him that he had been recently discharged from the army, where they told him he was in good health. Jopes testified that Tony Tesluk called him in November, 1967, and said that his son had been killed in a car accident.

Tony Tesluk testified that Jopes inquired about Robert's nervous breakdown and asked if Tony could give him some further information. Tony said that he told Jopes that Robert had had a nervous breakdown, but he had been released from the hospital for about a year and, as far as Tony was concerned, was in perfect health. Tony said that Jopes told him he wouldn't put anything about Robert's nervous breakdown on the application because he didn't want to "confuse it." Jopes told him that Robert was healthier than the other two applicants and he was anxious to close the deal. Tony said he told Jopes that it was up to him whether he included the nervous breakdown in the application.

Joseph Vogenthaler testified that Jopes said that Robert had told him about his nervous breakdown and he wanted Tony to elaborate on it. Tony told Jopes the breakdown happened some time ago and that Robert was fine now.

Jopes was recalled on rebuttal and testified that he was never informed by anyone that Robert had had a nervous breakdown or any other type of mental disorder.

Among the facts and conclusions stipulated to by the parties during the trial, was the following:

9. The mental disease or disorder suffered by Robert A. Tesluk materially affected both the acceptance of the risk and the hazard assumed by Metropolitan Life Insurance Company; that if Metropolitan Life Insurance Company had known the true facts pertaining to the prior mental or nervous disorder of Robert A. Tesluk, it would not have issued the subject policy.

The principal question before us is whether Metropolitan could be charged with the knowledge, if any, of its agent. If it can be so charged, Metropolitan is estopped from avoiding the policy. If it is not properly chargeable with the knowledge of Robert's condition, Metropolitan may avoid the policy because the misrepresentation admittedly materially affected the acceptance of the risk. Ill Rev Stats 1967, c 73, § 766; Campbell v. Prudential Ins. Co., 15 Ill2d 308, 155 NE2d 9.

Plaintiff has presented to us cases which hold that the exercise of good faith by the insured in disclosing to the agent the complete facts which the insurer claims were misrepresented, is notice to the insurer. Metropolitan does not dispute this. This rule is intended to protect those who deal with the agent and the insurance company in good faith. For example, in Oberg v. John Hancock Mut. Life Ins. Co., 114 Ill App2d 152, 251 NE2d 918, the Appellate Court reversed and remanded a summary judgment for the insurer where the application failed to disclose certain prior medical history. In that case, the applicant gave correct oral answers which were incorrectly recorded by the insurer's authorized agent. The court, however, noted that it was not dealing with a case in which an insured is acquainted with circumstances plainly indicating that the agent will not advise his principal of the true facts.

Similarly, in Carroll v. Preferred Risk Ins. Co., 34 Ill2d 310, 215 NE2d 801, the court stated that the relationship between an applicant and an insurer requires good faith on the part of the applicant because of the peculiar character of the insurance contract. In Jones v. Aetna Ins. Co., 201 Ill App 142, the court noted that there is an exception to the rule that notice to the agent is notice to the principal and that this rule does apply where the facts show collusion between the agent and the one with whom he is dealing to defraud the insurer or where the facts and circumstances are such as to raise a clear presumption that the agent will not perform his duty. In Woodlawn Farm Co. v. Farmers and Breeders Livestock Ins. Co., 227 Ill App 577, 583, the court pointed out, "Notice to the agent is not notice to the principal

when the facts are such as to authorize the inference that he will conceal his information from the principal."

In Mutual Life Ins. Co. v. Hilton-Green, 241 US 613, 36 S Ct 676, the Court noted that the assured, at the least, permitted an application containing material misrepresentations to be presented by subordinate agents to officers of the insurance company under circumstances which he knew precluded the true facts from being revealed. In reversing judgment for the insured, the Supreme Court stated, 241 US at 622, 36 S Ct, at 680:

> The general rule which imputes an agent's knowledge to the principal is well established. The underlying reason for it is that an innocent third party may properly presume the agent will perform his duty and report all facts which affect the principal's interest. But this general rule does not apply when the third party knows there is no foundation for the ordinary presumption—when he is acquainted with circumstances plainly indicating that the agent will not advise his principal. The rule is intended to protect those who exercise good faith and not as a shield for unfair dealing. (Citing authorities.)

■ ■ It is clear that good faith was not exercised in procuring the policy in the case at bar. Tony Tesluk testified that he told Jopes about Robert Tesluk's nervous breakdown and that Jopes told him he would not include that information in the application because it would only "confuse the matter." Tony said he told Jopes that it was up to him. He thus knew that material information which Metropolitan requested on its application would not be forwarded to it. Metropolitan is, therefore, not chargeable with that knowledge and can avoid the policy. Metropolitan's motion for a directed verdict or a judgment notwithstanding the verdict should have been granted because the evidence offered by the plaintiff overwhelmingly showed his lack of good faith and his complete failure to make a full and fair disclosure in the application submitted to Metropolitan.

Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 510, 229 NE2d 504, 513.

Accordingly, the judgment is reversed.

Reversed.

MURPHY and ADESKO, JJ., concur.