RUBY J. LOGAN, Plaintiff-Appellant, *v.* ALLSTATE LIFE INSURANCE COMPANY, Defendant-Appellee.

(No. 72-277;

Second District—May 14, 1974.

*Rehearing denied June 26, 1974.*

Albert S. Salvi, of Lake Zurich, and Charles Scott, of Waukegan, for appellant.

Peterson, Ross, Rall, Barber & Seidel, of Chicago, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

This is an action to recover benefits payable under a life insurance policy. On July 16, 1968, the defendant, Allstate Life Insurance Company (Allstate), issued a decreasing term, mortgage retiring, life insurance policy upon the life of Donald P. Logan in the initial face amount of $21,000. Upon the death of the insured on October 1, 1968, Allstate claimed that the insured had misrepresented his prior medical history to its insurance agent and to its medical agent who examined the decedent, and refused to pay the benefits under the policy. Thereupon, the primary beneficiary of the policy, the wife of the insured, Ruby J. Logan, filed the instant suit against Allstate. The jury rendered a verdict for the plaintiff but the trial court granted defendant's motion for judgment notwithstanding the verdict and entered judgment for the defendant. The sole issue before this court is whether the trial court properly granted defendant's motion for judgment *non obstante veredicto.*

In the latter part of April, 1968, Logan went to an oral surgeon in order to have a wisdom tooth extracted. During a 7-year period prior to the time Logan went to the oral surgeon he had never been hospitalized or involved in an accident of any kind.

On May 4, 1968, he made an appointment with Dr. Leonard Goldberg. He told his wife that he made the appointment because his "tooth" was bothering him and he had lost a couple of pounds. This was his first checkup in 2 or 3 years. Logan complained to Dr. Goldberg of swelling behind his left ear. He stated to the doctor that since he had his wisdom tooth extracted, he had been feeling dizzy and had not been able to eat too well. Also, his right arm had been cramping for a few days.

The doctor's examination revealed that Logan had an enlarged lymph gland in the neck and other enlarged glands in other parts of his body. Because of Logan's pale appearance, the doctor suspected that Logan

was anemic and sent him for a blood test. Results from the blood test indicated that Logan was anemic. Additionally, the results of one part of the blood test, the white cell differential count, indicated that there was something abnormal which could not have been caused by anemia or by bleeding after a tooth had been extracted.

On May 7, 1968, Dr. Goldberg advised Logan that he should be hospitalized for further tests and a lymph gland biopsy. Logan refused to be hospitalized and maintained his blood condition was caused by the bleeding from the extraction. Later, he became sick and changed his mind.

Logan was hospitalized from May 19, 1968, to June 4, 1968, for diagnostic tests as well as a lymph gland biopsy and bone marrow biopsy. The bone marrow biopsy revealed cancer cells. Dr. Goldberg and Dr. Irving A. Friedman, a specialist called in for consultation, suspected that the defendant had lymphoma. Lymphoma is a general disease of the lymph nodes and ventricular system (marrow, liver, spleen and different cells which replace these organs). The doctors began treating Logan for this disease by giving Logan various combinations of drugs.

Their diagnosis, however, was not confirmed until after Logan's death. Additionally, Logan was never told of the seriousness of his disease or that he was suffering from lymphoma. The doctors did not want to frighten the patient without any benefit. The doctors did discuss Logan's blood condition with Logan many times in a vague manner. They told Logan that he had anemia and an undetermined disease of the blood which was in a general group of diseases with which they were familiar.

After his release on June 4, 1968, Logan returned to work. Logan called Allstate Life Insurance Company and on July 9, 1968, Richard Bieck, an Allstate insurance agent, visited the Logan residence. Logan wanted a life insurance policy which would be enough to pay off the mortgage on his house. Bieck recommended a policy and they began going through the procedures required in applying for the insurance. Bieck was the one who filled in the application. At trial, Logan's wife testified:

> "My husband told him that he had been in the hospital, that he had some tests made, and he went in for a check-up and said he had anemia * * *. He [Bieck] said it did not matter about the check-up that their doctor would examine my husband * * * their doctor would give him a physical."

Bieck had no recollection of visiting the Logan residence or filling out the application. The pertinent portions of the insurance application did not refresh his memory and were not introduced into evidence.

Dr. Ralph Ruthenberg, the doctor who gave Logan a medical ex-

amination as part of Logan's application for life insurance, did not have any personal recollection of his examination of Logan. Dr. Ruthenberg's medical report, however, was made part of the insurance policy and the policy has been introduced into evidence by the plaintiff. The report was filled out by Dr. Ruthenberg and signed by Logan verifying that the statements were fully and accurately recorded. The medical report revealed that Logan answered "No" to a question concerning whether he ever had or had been told he had any disorder of the blood. It also revealed that he answered "No" to questions concerning whether he ever had blood studies or other special examinations made, and whether he had been in a hospital within the last 10 years.

On October 1, 1968, Logan died for reasons other than suicide at the age of 33.

■■ As defendant Allstate was granted a judgment *n.o.v.* in the lower court we will affirm the trial court's judgment only if all the evidence when viewed in its aspect most favorable to the plaintiff, Mrs. Logan, so overwhelmingly favors the movant, Allstate, that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill.2d 494, 229 N.E.2d 504.

If the insured Logan made any misrepresentations which were made with actual intent to deceive or which materially affect acceptance of the risk by the insurer in its application for insurance, the insurer, Allstate, may rescind the policy and refuse to pay any benefits. (*Campbell v. Prudential Insurance Co.* (1958), 15 Ill.2d 308, 155 N.E.2d 9; Ill. Rev. Stat. 1967, ch. 73, sec. 766.) The plaintiff contends that the evidence shows that the insurer made no misrepresentation concerning his health because he did not know and the doctors did not tell him about his serious condition.

·■■■ Statements which are false and material are misrepresentations which will void the contract even if they were made in good faith or by mistake. (*Weinstein v. Metropolitan Life Insurance Co.* (1945), 389 Ill. 571, 60 N.E.2d 207. *Campbell v. Prudential Insurance Co., supra.*) However, for a false statement to be a misrepresentation it must have a tendency to mislead. (*Weinstein v. Metropolitan Life Insurance Co., supra.*) A statement cannot be misleading unless it is of such character that an insurance company could reasonably rely upon it in order to determine the risk. Accordingly, an insurance company would not expect an applicant to answer questions concerning his past and present condition of his health with the skill of a trained physician. Thus, an insurance company cannot expect or require an applicant himself to disclose information concerning his health which is beyond the ken of an ordinary layman when he has not been given such information by his doctor. *Cf. Min-*

*nesota Mutual Life Insurance Co. v. Link* (1907), 230 Ill. 273, 82 N.E. 637.

In this case Logan made no misrepresentation when he did not disclose that he was suffering from lymphoma. Such information was beyond his knowledge as a layman and the evidence shows that this information was not disclosed to him by his doctors. However, the evidence reveals that Logan was told he had some type of blood disorder and that he was hospitalized for 15 days in May and June of 1968. Yet, the medical report indicates that he told the examining doctor he had no blood disorder and had not been hospitalized. These statements are clearly false and show an absence of good faith on the part of the insured. The statements were also material. Testimony of the defendant's expert witness relating to the materiality of the misrepresentations on the acceptance of the risk is undisputed. (*Cf. Mooney v. Underwriters at Lloyd's, London* (1966), 33 Ill.2d 566, 213 N.E.2d 283.) Therefore, Logan made misrepresentations of such character as would permit Allstate to rescind the contract and refuse to pay any benefits under it. Ill. Rev. Stat. 1967, ch. 73, sec. 766.

The plaintiff, however, contends that the evidence also shows that the insured Logan completely and truthfully disclosed his present and past medical history to the insurance agent but Allstate's agent told him his medical history was not important and entered false answers in the application. The plaintiff argues, therefore, that Allstate is estopped from relying on these false answers in its attempt to rescind the policy.

■ ■ It has long been the rule in Illinois that when an applicant for insurance gives correct oral answers to questions propounded by an insurance agent but the insurer's agent incorrectly records these answers the insurer cannot rely upon the falsity of the answer to avoid the policy. (*Niemann v. Security Benefit Association* (1932), 350 Ill. 308, 183 N.E. 223; *Guter v. Security Benefit Association* (1929), 335 Ill. 174, 166 N.E. 521; *Weisguth v. Supreme Tribe of Ben Hur* (1916), 272 Ill. 541, 112 N.E. 350; *Provident Savings Life Assurance Society v. Cannon* (1903), 201 Ill. 260, 66 N.E. 388; *Royal Neighbors v. Boman* (1898), 177 Ill. 27, 52 N.E. 264; *Andes Insurance Co. v. Fish* (1874), 71 Ill. 620; *Oberg v. John Hancock Mutual Life Insurance Co.* (1969), 114 Ill.App.2d 152; 251 N.E.2d 918; Annot., 26 A.L.R.3d 6 (1969) sec. 3, 4.) The insurer cannot rely on these incorrectly recorded answers even when the insured knows that the agent has entered answers different from the ones he gave where the incorrect answers are entered pursuant to the agent's advice, suggestion, or interpretation. (*Royal Neighbors v. Boman* (1898), 177 Ill. 27, 52 N.E. 264. See Annot., 26 A.L.R.3d 6 (1969), sec. 7). In these situations, the agent's knowledge of the truthfulness of the applicant's

statement will be imputed to the insurance company. (*Nieman v. Security Benefit Association* (1932), 350 Ill. 308, 183 N.E. 223; *Guter v. Security Benefit Association* (1929), 335 Ill. 174, 166 N.E. 521; *Weisguth v. Supreme Tribe of Ben Hur* (1916), 272 Ill. 541, 112 N.E. 350; *Provident Savings Life Assurance Society v. Cannon* (1903), 201 Ill. 260, 66 N.E. 388.) Only where the applicant has acted in bad faith, either on his own or in collusion with the insurer's agent, will a court refuse to impute the knowledge of the agent to the insurance company. *Germania Fire Insurance Co. v. McKee* (1880), 94 Ill. 494; *Tesluk v. Metropolitan Life Insurance Co.* (1970), 130 Ill.App.2d 290, 264 N.E.2d 566.

When the evidence is viewed in the aspect most favorable to the plaintiff, the evidence discloses that the agent Bieck had knowledge of Logan's prior hospitalization and anemic condition. Logan's wife testified that Logan revealed this information when Bieck was filling out the application. Her testimony was not contradicted by Bieck who could not remember his visit. We will not, however, impute the agent's knowledge to Allstate because the evidence also shows that Logan gave answers which he knew to be false to the insurer's medical examiner in spite of Bieck's admonition that the doctor's examination was the all-important factor in Allstate's decision to insure him. Logan's course of conduct in giving these false answers to the medical examiner reveals that Logan lacked good faith in his dealings with Allstate. Allstate, therefore, is not estopped from relying on the falsity of Logan's answers in avoiding the insurance policy.

■■ The trial court correctly granted defendant's motion for judgment *n.o.v.* When all the evidence produced at trial is viewed in its aspects most favorable to the plaintiff, Mrs. Logan, it so overwhelmingly favors the movant, Allstate, that no contrary verdict based on that evidence could ever stand. The evidence when viewed in its aspects most favorable to the plaintiff reveals that the insured Logan made material misrepresentations to the insurer's agent. The evidence also discloses that Logan made these misrepresentations in bad faith and therefore Allstate is not stopped from relying upon these misrepresentations even though the evidence also shows that one of its agents had knowledge of the truth. Accordingly, the decision of the trial court which permits Allstate to avoid the contract under section 154 of the Insurance Code (Ill. Rev. Stat. 1967, ch. 73, sec. 766) is affirmed.

Judgment affirmed.

T. MORAN, P. J., and SEIDENFELD, J., concur.