MALINDA GOOD, Plaintiff-Appellant, *v.* THE NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY, Defendant-Appellee.

First District (1st Division)　No. 61907

Opinion filed April 5, 1976.

Gregory L. Tumbarello, of Chicago, for appellant.

John E. Kelly, of Chicago (Francis X. Riley, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Malinda Good (plaintiff), beneficiary of a life insurance policy covering her infant son, Isaiah, sued The National Life and Accident Insurance Company (defendant) for failure to pay her the face amount of the policy upon the child's death. After a bench trial, the court found in favor of defendant. Plaintiff appeals.

Plaintiff's son, Isaiah Good, was born on February 14, 1972. On April 25, 1972, plaintiff made application to defendant for insurance covering the life of the infant and providing for accident benefits. She dealt with defendant through its licensed resident agent, Robert Gould. The policy, with plaintiff as beneficiary, was issued on May 1, 1972, with a life insurance of $1500 and with various accident benefits. Plaintiff was to pay a weekly premium of 54 cents.

On July 23, 1972, the insured, Isaiah Good, died. The cause of death as noted on the death certificate was "acute cardiac dilatation, unknown cause; associated complete bilateral cleft palate." When defendant's agent made his next regular periodic visit to plaintiff's residence to collect the premium due on the policy, plaintiff informed him of the death of the insured. The agent completed a claim form and submitted it to defendant. Defendant refused to pay the claim but tendered refund of all premiums paid.

In its answer to plaintiff's complaint, defendant denied liability on the theory that the insured was not in sound health at the time of application for the policy, because he had been born with a bilateral cleft palate and a right cleft lip. Defendant further alleged that this condition was known to plaintiff when she applied for the policy and that the policy would not have been issued if defendant had been apprised of the condition of the insured. The question on the policy application as to whether the insured had any deformities was answered in the negative. Defendant's answer quoted from the policy: "This policy shall take effect on the date of issue provided that the insured is then alive and in sound health." In her reply, plaintiff responded that the infant was in sound health on the date of the application. She averred that the child's physical condition was known to defendant's agent, Robert Gould who had prepared the application and that the agent saw the child and was informed by her of its condition at the time of application.

At trial plaintiff testified that, except for the cleft lip and palate, the insured was a healthy and normal child. Plaintiff had purchased the policy from Gould when she met him on the street. At that time, she told Gould about the cleft lip and palate and showed him the child. He told her that the cleft lip and palate had nothing to do with the child's health because it

was on his mouth. She testified that Gould prepared the application for her to sign while she was seated in his car. She was never asked to read the document and did not read it. Mr. Gould collected premiums from her a number of times and the insured infant was present on many of these occasions.

The child had an operation in July 1972, and died at home a week or two later. Plaintiff did not recall whether the deceased child was taken to a hospital and did not remember the preparation of the claim form.

Robert Gould testified that he is an insurance agent employed by defendant. His duties include filling out policy applications and claim forms and collecting premiums. He collected premiums from plaintiff on the policy here involved and for a policy insuring the life of another of her children. He himself filled out the application for an insurance policy on Isaiah Good. He did not read the application to plaintiff, but only asked her questions and wrote down the responses. He did not ask her to read it and, to his knowledge, the application was never read by plaintiff. Similarly, after the death of the child, he completed the claim form and did not ask plaintiff to read it. He obtained a death certificate on his own, and wrote only "acute cardiac dilation" as the cause of death, due to the space limitation on the claim form. He did not attempt to verify the information on either form.

The agent had opportunities to observe the deceased child both in a bassinet and in its mother's arms when he filled out the application and on a number of other occasions thereafter. He denied any recollection of seeing a cleft lip. After the child's death, he was told by his employer that the claim would not be paid "because of heart failure or that the child had been sick prior to taking out the insurance."

The only conflict between the testimony of the two witnesses relates to the location at which the agent filled out the application for insurance on Isaiah Good. Plaintiff said that the application was filled out in the agent's car while the agent testified that he had filled out the form in plaintiff's apartment.

In this court plaintiff contends that the trial court erred in wholly disregarding the unimpeached and uncontroverted testimony of witnesses where such testimony was not inherently improbable and that defendant is estopped from asserting any misrepresentation in plaintiff's application for insurance relating the cleft lip and palate of the insured, since any such misrepresentation was the result of the insurer's agent's interpretations of the plaintiff's truthful answers and disclosures. Defendant contends that plaintiff failed to prove the allegation of her complaint in which she pleaded the sound health of her infant son, who died at age five months of the effects of an operation and birth deformities

and that the court had sufficient evidence to determine that the conduct of the plaintiff was inherently incredible, and the agent did not mislead her.

■■ In Illinois, an insurer may refuse to pay benefits under a life insurance policy if, at the time of the application for insurance, misrepresentations were made either with actual intent to deceive or which materially affected the acceptance of the risk by the insurer. (Ill. Rev. Stat. 1973, ch. 73, par. 766; *Alperin v. National Home Life Assurance Co.* (1975), 32 Ill. App. 3d 261, 336 N.E.2d 365; *Logan v. Allstate Life Insurance Co.* (1974), 19 Ill. App. 3d 656, 312 N.E.2d 416.) However, "when an applicant gives correct oral answers which are incorrectly recorded by the authorized agent, the insurer cannot rely upon the falsity of such answers to avoid the policy." *(Oberg v. John Hancock Mutual Life Insurance Co.* (1969), 114 Ill. App. 2d 152, 160-61, 251 N.E.2d 918. See also *Logan* and cases there cited at 19 Ill. App. 3d 656, 660.) The same result would be reached where the incorrect answer is entered pursuant to suggestion, advice or interpretation of the insurer's agent. *Boyles v. Freeman* (1974), 21 Ill. App. 3d 535, 315 N.E.2d 899.

■■ Whether plaintiff informed defendant's agent concerning her child's cleft lip and cleft palate is an issue of fact. This court can set aside factual determinations by the trial court if such results are contrary to the manifest weight of the evidence. *(Turner v. Board of Education* (1973), 54 Ill. 2d 68, 72, 73, 294 N.E.2d 264.) In the instant case, the trial court's finding in favor of the defendant was apparently based upon a determination that defendant's agent, Gould, was not told of the child's condition when he filled out the policy application. We find this result contrary to the manifest weight of the evidence.

Plaintiff testified that her child was in good health when she applied for the policy, except for a cleft lip and cleft palate. At that time she told Gould of the cleft lip and palate and showed the child to him. She testified that he had informed her that "that had nothing to do with the child's health because it was on his mouth." Further, she testified that Gould had seen the child on a number of other occasions after the policy application was made.

Gould's testimony did not contradict that of plaintiff. He merely testified that he did not recall seeing a cleft lip. He corroborated plaintiff's statement that he had seen the child a number of times. He testified that he himself had filled out the application form, he did not ask plaintiff to read the completed form and that to his knowledge she did not do so. The only conflict between the testimony of the two witnesses concerns an immaterial detail with regard to whether the application was filled out in plaintiff's home or Gould's car.

The judgment appealed from is therefore reversed and the cause

remanded with directions that judgment be entered in favor of plaintiff and against defendant for $1500.

Judgment reversed and cause remanded with directions.

BURKE and ADESKO, JJ., concur.