George **HART**, doing business as Hart Motor Express, Plaintiff-Appellee,

v.

James L. **GALLIS**, James Chilis and Peter Chrisos, partners, doing business as Chicago Truck Terminal Service Station, Defendants-Appellants.

No. 12763.

United States Court of Appeals Seventh Circuit.

Feb. 10, 1960.

Rehearing Denied March 31, 1960.

John C. Gekas, Phillip S. Makin, Chicago, Ill., for defendants-appellants.

Franklin R. Overmyer, Donald Mac-Kay, Chicago, Ill., for appellee.

Before DUFFY and SCHNACKEN-BERG, Circuit Judges, and MERCER, District Judge.

SCHNACKENBERG, Circuit Judge.

From a judgment for $6323.04 and costs, in favor of plaintiff George Hart, doing business as Hart Motor Express, entered against defendants James L. Gallis, James Chilis and Peter Chrisos, partners, doing business as Chicago Truck Terminal Service Station, they have appealed. Jurisdiction was based upon diversity of citizenship and the case was tried without a jury.

A cargo of eggs was shipped by a consignor from Wadena, Minnesota to Pittsburgh, Pennsylvania, via plaintiff, a common carrier by motor vehicle authorized to operate between points in the state of Minnesota and Chicago, Illinois. A covering bill of lading designated the Great Atlantic & Pacific Tea Co. at Pittsburgh as consignee. Plaintiff transported the cargo by his truck to Chicago.

His Chicago office issued a freight bill for said eggs.

Located in the middle of the South Water Market, in Chicago, defendants operate a service station catering to itinerant truckers, who bring loads to the Chicago market and park their vehicles at such stations until outgoing loads can be found. Especially where commodities exempt under the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., are involved, defendants furnish to shippers and originating truck lines a service in contacting itinerant truckers who undertake to carry a shipment of destination beyond Chicago. Defendants have a drivers' room and a restaurant. Their advertisment in the telephone company's Red Book includes the name shown in the caption of this opinion.

Defendants charge a fee for their services to truckers in finding loads of exempt goods for transportation usually to the places from which the truckers come. The charges vary according to circumstances, such as the desire of the driver to leave in a hurry.

Witness Jacobsen, when he was plaintiff's employee, was solicited by or had done business with other stations similar to defendants' and knew the custom of the trade. Jacobsen wrote on the freight bill in this case "Pay Gallis $217.51" and gave the driver (Ray Fisher) selected by defendants a check for that amount payable to defendant Gallis. This check was cashed by defendants. This payment was figured on the mileage basis of the relative distances the carriers were to handle the load.

Plaintiff put ice in the trailer and also hay as packing to protect the eggs. Jacobsen testified that he said to the dispatcher when the driver came from defendants, "Look at his outfit to see if it is a good sturdy piece of equipment." Defendants gave Fisher a check for around $189 to $199. This left defendants with a finder's fee of about $10, $12, or $15.

The findings of fact entered by the district court include:

"* * * 7. Upon arrival of said load of eggs in Chicago, Illinois, plaintiff called and requested defendants to find an interline carrier to haul such load from Chicago to Pittsburgh.

"8. Defendants, pursuant to plaintiff's said request, sent a trucker who operated an appropriate vehicle to the place of business of plaintiff in Chicago, where the cargo was loaded onto the said vehicle and where plaintiff drew a check to defendants' order in the amount of of $217.51 and gave it to the trucker, who then endorsed the through bill of lading 'Paid Ray Fisher'.

"9. The said check was made payable to one of the defendants at defendants' request.

"10. The trucker returned to defendants' place of business, gave defendants the said check and received in return from defendants the defendants' checks for a total sum between $180 and $200.

"The difference between the amount of the plaintiff's check and the sum of defendants' checks was the amount of defendant's fees for gas station services and services in bringing plaintiff and the trucker together.

*    *    *    *    *

"12. The cargo of eggs was never delivered to the consignee and has not been returned to the plaintiff, and the trucker could not be located.

"13. The shipper made claim against the plaintiff for loss of said cargo, and plaintiff was released from liability on and received from the shipper an assignment of said claim by paying to the shipper the sum of $6,118.04. * * *"

There is no conflict as to the evidentiary facts in this case nor is there any question as to the credibility of the witnesses.

The truckload of eggs entrusted to plaintiff in Minnesota moved under a through bill of lading from the point of

shipment toward Pittsburgh, Pennsylvania. The only carriers involved in this transportation were plaintiff, a common carrier, from Minnesota to Chicago, Illinois, and Ray Fisher, who undertook to carry the cargo from Chicago, Illinois, to the Pittsburgh destination which was never reached.

Defendants never assumed the character of carriers in this case. They furnished a valuable service to truck operators in connection with the operation of their truck service station, where truck drivers ate and bought supplies and fuel for their trucks. The service was established and recognized at the market in Chicago where defendants and other persons so engaged operated. It was used by plaintiff, seemingly as a matter of course. The service was a benefit to carriers such as plaintiff, as well as itinerant truckers such as Fisher.

There is no indication that plaintiff looked upon defendants as a carrier. Upon the arrival of the load in Chicago, plaintiff called defendants and requested them to find an interline carrier to haul this load from Chicago to Pittsburgh. Plaintiff, when he turned over the cargo of eggs to Fisher, put ice in the trailer and also hay as packing to protect the cargo. Plaintiff's agent Jacobsen told plaintiff's dispatcher to examine Fisher's truck to see if it was a sturdy piece of equipment. All of the surrounding circumstances shown by uncontroverted evidence are inconsistent with plaintiff's contention that defendants are liable as carriers.

The substantial evidence in the record is inconsistent with the findings and conclusions of the district court. We may reverse where the findings are without substantial evidence to support them, or where the court misapprehended the effect of the evidence. Western Cottonoil Company v. Hodges, 5 Cir., 218 F.2d 158, 161. Where the material evidence consists mainly of documents and uncontroverted oral testimony, the findings of fact are not absolutely binding on this court. Fargo Glass & Paint Co. v. Globe American Corp., 7 Cir., 201 F.2d 534, 536. It is undoubtedly true that a court of review under rule 52(a), Fed.Rules Civ.Proc. 28 U.S.C.A., has the power, even the duty, in a proper case, to overturn the findings of the trial court. Arnolt Corp. v. Stansen Corp., 7 Cir., 189 F.2d 5, 9, where we quoted from United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, as follows:

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

We decide this case upon the facts proved. On those facts the district court erred in entering judgment for plaintiff. That judgment is reversed.

Reversed.