Pauline APOLSKIS, Plaintiff-Appellee,

v.

CONCORD LIFE INSURANCE COMPANY, Defendant-Appellant.

No. 18714.

United States Court of Appeals, Seventh Circuit.

June 29, 1971.

Donald Segal, Bernard E. Epton, Lawrence A. Berman, Chicago, Ill., for defendant-appellant; Epton, McCarthy, Bohling & Druth, Ltd., Chicago, Ill., of counsel.

Clarence M. Dunagan, Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and PELL and SPRECHER, Circuit Judges.

SWYGERT, Chief Judge.

As the named beneficiary, Pauline Apolskis sought recovery in the district court under a $10,000 insurance policy issued by the Concord Life Insurance Company on the life of her son, Charles Apolskis. Federal jurisdiction was based on diversity of citizenship. The district court, following a trial without a jury, entered findings of fact and conclusions of law favorable to the plaintiff. Judgment was entered against the defendant for the face amount of the policy plus $1,000 as attorney's fees because of Concord's alleged vexatious refusal to pay the claim. We reverse.

The evidence submitted to the trial judge showed the following uncontradicted facts. On the instruction of his personal physician, Dr. William McCarthy, the insured was admitted to St. Francis Hospital, Blue Island, Illinois in August 1966 where he was operated for a hernia and a gouty condition of an elbow. His examination by Dr. McCarthy at that time also revealed an irregular heartbeat. The hospital records show that this condition was diagnosed as atrial fibrillation, a condition which Dr. McCarthy referred to in his testimony as an "organic heart disease."

When the insured was discharged from the hospital (five days after admission) Dr. McCarthy discussed with him the advisability of treating his heart condition by electric shock. It was decided that such treatment would not be undertaken at that time. Dr. McCarthy again examined the insured in September 1966 and noted that his heartbeat was still irregular. During the examination the insured remarked that he was taking out an insurance policy. Dr. McCarthy testified that he made some mention to the insured of his cardiac condition and that the insured replied "to the effect that he would not—was not going to mention it."

On September 22, 1966, less than a month after his discharge from the hospital, the insured submitted by mail his application for the insurance policy on which this suit is based. Question seven of the application asked whether the applicant, to the best of his knowledge and belief, had "been under observation or had any medical or surgical advice or treatment or been hospital confined during the past ten years" and requested details including the nature of any ailments and the places and dates of treatment. In answer to this question the insured stated that he had received medical attention within the last ten years and furnished particulars relating to the hernia operation which took place on August 22, 1966; no other details concerning his medical history were given. In response to question nine of the application, the insured stated that he believed that he was "now in good health and free from any physicial impairment or disease." The application concluded with an authorization to any doctor or hospital to disclose to Concord, upon its request, any

information concerning the insured's health. The policy was issued on the basis of the application without a medical examination. On May 10, 1967 the insured died in his sleep as the result of an "acute coronary occlusion."

◼◼ The foregoing facts were not contradicted or challenged, and there is no basis in this record for not believing them.[1] Indeed, there is no indication that the district judge questioned any witness' credibility, and he appeared to credit the testimony of all witnesses. Accordingly, the case is in the same posture as if it had been submitted on stipulated facts and the scope of our review is broader than it would be if the trial court's findings were based on credibility resolutions and inferences drawn from conflicting testimony. *See, e. g.,* Carter Oil Co. v. McQuigg, 112 F.2d 275 (7th Cir. 1940); Wigginton v. Order of United Commercial Travelers of America, 126 F.2d 659 (7th Cir.), cert. denied, 317 U.S. 636, 63 S.Ct. 28, 87 L.Ed. 513 (1942); Hart v. Gallis, 275 F.2d 297, 299 (7th Cir. 1960); Yorke v. Thomas Iseri Produce Co., 418 F.2d 811 (7th Cir. 1969).

◼ The evidence clearly established that the insured knowingly failed to disclose his heart condition. The district court's finding that, "The insured made no false and/or untrue statements in his application for life insurance," is against the clear weight of the evidence and was apparently premised on an erroneous view of the law. Either of those defects is sufficient to require that the finding be set aside. Cleo Syrup Corp v. Coca-Cola Co., 139 F.2d 416, 417–418 (8th Cir. 1943), cert. denied, 321 U.S. 781, 64 S.Ct. 638, 88 L.Ed. 1074 (1944); Shapiro v. Rubens, 166 F.2d 659, 666 (7th Cir. 1948). Moreover, on all the evidence in this case, we are "left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); Yorke v. Thomas Iseri Produce Co., *supra.* Accordingly, we conclude that the district court's finding was "clearly erroneous" under Rule 52(a), Fed.R.Civ. P.

◼ In response to the request in the application that he submit details concerning any medical observation he had been under and any medical treatment or advice he had received, the insured gave correct information about his hernia operation, but totally failed to disclose a heart condition of which he had been twice advised in the month preceding his application. In addition, the insured asserted that he believed that he was "free from any physical impairment or disease." The plaintiff argues that her son's answers in the application were literally true. She maintains that her son was never treated for his heart condition, treatment was not advised, and Dr. McCarthy did not keep her son under observation. She points to the fact that her son worked until the day he died and apparently felt no physical discomfort. From that she argues that he did believe that he was in good health and free from any disease. We reject these arguments.

Dr. McCarthy had made the insured aware of his heart condition and had discussed the possibility of commencing treatment. This was "medical advice" within the clear meaning of question seven. The insured's disclosure of the hernia operation and suppression of any information about his heart was the equivalent of a direct assertion that the hernia was the only medical problem of which he had been made aware in the last ten years. Further, he could not truthfully state in response to question nine that he believed that he was in good

---

1. Credibility determinations are the province of the district judge who normally may give oral testimony whatever weight he feels it deserves, Carlisle v. M/S Sistina, 407 F.2d 824 (5th Cir. 1969); Breland v. United States, 323 F.2d 492, 496 (5th Cir. 1963). However, a trial judge may not totally disregard uncontradicted and apparently creditable testimony where no basis for so doing appears in the record. Gee Chee On v. Brownell, 253 F.2d 814, 817 (5th Cir. 1958).

health when he had been told that his heart was not functioning normally during the weeks immediately preceding the date on which he filed the application. The evidence in this case required a finding that false statements were made in the insurance application.

■ Under Illinois law, which is applicable in this case, the presence of false statements in an application for insurance is not in itself a ground for avoiding an insurance policy issued on the basis of the application; the insurer must prove that the false statements either were made with intent to deceive or involved matters materially affecting the acceptance of the risk. Ill.Rev.Stat. ch. 73, § 766 (1969); Campbell v. Prudential Ins. Co., 15 Ill.2d 308, 155 N.E.2d 9 (1958); Jessen v. Aetna Life Ins. Co., 209 F.2d 453 (7th Cir. 1954). The district court, ruling that there were no false statements in the application, made no finding on intent or materiality. We need not, however, remand for findings on those issues because the evidence clearly established that the insured intended to deceive Concord. In August and September 1966 the insured was told his heart was functioning abnormally and treatment of the problem was discussed with him. Two weeks before he mailed his application to Concord, he told his physician that he did not intend to mention the heart condition when he applied for insurance. There can be no question on these facts that the insured intended to mislead Concord. In similar situations involving suppression of an obviously known and apparently material medical condition or treatment, courts have had no difficulty finding bad faith or intent to deceive. *See, e. g.,* Campbell v. Prudential Ins. Co., 16 Ill.App.2d 65, 76, 147 N.E.2d 404, 410, aff'd, 15 Ill.2d 308, 155 N.E.2d 9 (1958); Pence v. United States, 316 U.S. 332, 339, 62 S.Ct. 1080, 86 L.Ed. 1510 (1942); Mutual Life Ins. Co. of New York v. Hilton-Green, 241 U.S. 613, 622, 36 S.Ct. 676, 60 L.Ed. 1202 (1916); Woods v. National Life & Accident Ins. Co., 347 F.2d 760, 767–768 (3d Cir. 1965); Metropoli-

tan Life Ins. Co. v. Fugate, 313 F.2d 788, 794 (5th Cir. 1963); Coleman v. Aetna Life Ins. Co., 261 F.2d 296, 300 (7th Cir. 1958); Stopper v. Manhattan Life Ins. Co., 241 F.2d 465, 469 (3d Cir.), cert. denied, 355 U.S. 815, 78 S.Ct. 17, 2 L.Ed.2d 32 (1957).

■ The insured's failure to disclose his heart condition cannot be excused on the ground that he believed the problem was a minor one and was not material enough to mention. An insurance applicant has the duty to act in good faith toward his potential insurer in an attempt to make a full and complete disclosure of all relevant information. Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 316–317, 48 S.Ct. 512, 72 L.Ed. 895 (1928); Tesluk v. Metropolitan Life Ins. Co., Ill.App., 264 N.E.2d 566 (1970); Carroll v. Preferred Risk Ins. Co., 34 Ill.2d 310, 312, 215 N.E.2d 801, 802 (1966). Furthermore, an insurer is entitled to truthful responses to all questions on an application so that it may correctly evaluate the risk and determine whether the applicant meets its underwriting standards. The applicant cannot be the judge of the materiality of his health problems; he must disclose all information known to him and permit the insurer to determine its materiality. Weinstein v. Metropolitan Life Ins. Co., 389 Ill. 571, 578, 60 N.E.2d 207, 210 (1945). If the insured did not believe his heart condition was material to the risk to be undertaken by Concord, then why did he suppress it? In a layman's mind the heart condition would be no less material than the hernia. The inference is clear that he disclosed the hernia because he believed it not material to Concord's acceptance of his application, but suppressed the heart condition because he thought it material.

■ The plaintiff argues that the fact that her son, by signing the application, authorized any doctor or hospital to release his medical records to Concord shows that he could not have intended to deceive Concord. We disagree. The insured must have known that the policy would be issued on the basis of his an-

swers to the application questions. *See* Stipcich v. Metropolitan Life Ins. Co., *supra* at 316–317, 48 S.Ct. 512.

Though not alluded to in the findings of fact, the record reveals that the district court thought plaintiff should prevail because Concord made no investigation of the insured's medical records as it was authorized to do under the application. This argument has not been pressed on appeal and it is clearly contrary to Illinois law. An insurance company need not make any independent investigation and may rely on the truthfulness of answers contained in an insurance application at least if there is nothing to put it on notice that certain answers may be false. Metropolitan Life Ins. Co. v. Moravec, 214 Ill. 186, 188, 73 N.E. 415, 416 (1905). *Cf.* Jacobson v. Equitable Life Assurance Soc'y of the United States, 381 F.2d 955, 960 (7th Cir. 1967).

Our conclusion that Concord was not liable to Mrs. Apolskis for the amount of the policy disposes of her claim for attorney's fees for delay in payment of the claim.

The judgment of the district court is reversed with directions to enter judgment for the defendant.