914 F.2d 260
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Janet BOUVIER, Plaintiff-Appellant,
v.
The PAUL REVERE LIFE INSURANCE COMPANY, Defendant-Appellee.
 No. 89-2826.
 United States Court of Appeals, Seventh Circuit.
 Argued April 12, 1990.
Decided Sept. 18, 1990.
 
 Before BAUER, Chief Judge, and CUMMINGS and WOOD, JR., Circuit Judges.
 
 ORDER
 
 1
 This is a diversity case that Plaintiff-Appellant Janet Bouvier no doubt now wishes she had not brought.
 
 
 2
 After receiving her applications dated May 18 and June 11, 1984, for an individual disability income insurance policy Defendant-Appellee, The Paul Revere Life Insurance Co., a corporation, issued the policy effective July 14, 1984. Later plaintiff submitted a claim for monthly benefits based upon her alleged total disability caused by exposure to tobacco smoke, fumes, and pollutants at work. Defendant thereafter made claim payments to plaintiff of $2,000.00 per month for the period January 17, 1986, to October 14, 1986; totalling $18,733.34. These monthly payments were discontinued when defendant determined that plaintiff was no longer totally disabled. Plaintiff disagreed with that determination and brought this suit seeking a resumption of claim payments on the basis that she was still totally disabled. The defendant answered, denying that plaintiff continued to be totally disabled, and sought judgment in its favor. Discovery began.
 
 
 3
 As discovery progressed, the character of this case changed. Defendant came to determine that plaintiff's original insurance applications about her medical and health history were false, incomplete and misleading, and were material to the risks defendant would incur in issuing the policy. Defendant then filed a motion for summary judgment and, based on the claimed misinformation supplied by plaintiff, defendant sought to void the policy ab initio and recover the monthly disability benefits previously paid to plaintiff in the amount of $18,733.34.
 
 
 4
 The district court granted defendant's summary judgment motion and entered judgment in favor of defendant and against plaintiff in the total amount of the previously paid disability benefits less the premiums paid by plaintiff. A copy of the district court's order is attached and made a part hereof. We affirm, and add a few additional comments.
 
 
 5
 Plaintiff was not a mere innocent applying for the defendant's policy. Both she and her husband, who assisted her, were experienced insurance producers. His insurance specialty was selling disability insurance. That is what he did in this case as he submitted his wife's application and received commissions from defendant.
 
 
 6
 Plaintiff complains that the district court granted summary judgment without analyzing the factual material to determine if there were unresolved issues of material fact. The district judge sufficiently sifted through the materials presented, analyzed them, and determined that there were no conflicts of material fact. Not every conflict in the evidence need be resolved if the uncontested material facts are sufficient as a matter of law to sustain the judgment. Plaintiff does not dispute the generally accepted principles of summary judgment law, only the application of these principles.
 
 
 7
 Plaintiff argues that she did not have the benefit of any conflicting fact issues being viewed in a light most favorable to her, and that the granting of the summary judgment was the district court's excuse for a summary clearing of the court's docket. In our view the uncontradicted material evidence clearly apparent in this record cannot be viewed in any light favorable to plaintiff. A bare contention that an issue of fact exists is not enough. Andersen v. Liberty Lobby, 477 U.S. 242, 247-48 (1986); Whetstine v. Gates Rubber Co., 895 F.2d 388, 395 (7th Cir.1990). Neither mere denials of material fact by a non-moving party, nor argument or conclusions without evidentiary support are sufficient to prolong this case for a jury trial. Posey v. Skyline Corp., 702 F.2d 102 (7th Cir.), cert. denied, 464 U.S. 960 (1983); First Nat'l Bank Co. v. Insurance Co., 606 F.2d 760, 768 (7th Cir.1979). Rather, "[a] party faced with a motion for summary judgment who bears the burden of proof on a particular issue may not rest on its pleadings but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
 
 
 8
 Plaintiff must have known she had a good faith obligation to make a full and complete disclosure of her medical history when she made her disability insurance application. American Ins. Corp. v. Sederes, 807 F.2d 1402, 1406 (7th Cir.1986); Apolskis v. Concord Life Ins. Co., 445 F.2d 31, 35 (7th Cir.1971). Her applications were neither full nor complete in material respects. Some truths, some omissions, some false statements, some misleading answers, and some incomplete answers do not add up to a jury trial if there is even one material fact that cannot be adequately disputed and that one fact would by itself be sufficient to void the policy.
 
 
 9
 Plaintiff failed to reveal the names of all her doctors and past treatments. She suggested in her answers that there was nothing adversely significant about her health, she was "OK now," had "no further problems," and that her physical examination resulted in "all normal findings." We are impressed with the fact, for instance, that at the time of her application plaintiff had been undergoing a series of sixty-six treatments from December 1982 to February 1984 for chronic back and spinal conditions. She had been treated 3 times in 1983 for bronchitis, had suffered from pneumonia in 1983 for about 2 weeks, had complained of migraine headaches for about 10 years, had arthritis, and had had some asthma symptoms as a child. To argue that the defendant should have launched its own full-scale investigation of plaintiff's medical condition before issuing the policy in spite of the satisfactory health picture painted by plaintiff is unavailing. Efforts to explain away the discrepancies or to minimize them is not enough. The applications were clearly deficient and caused the policy to issue when it otherwise would not have.
 
 
 10
 A procedural argument is made that plaintiff was not permitted adequate time for discovery after defendant's Motion for Summary Judgment was filed. Plaintiff knew the name of the defendant's witness on the misrepresentation issue and was given a substantial extension of time to take his deposition, but did nothing. Plaintiff could have at least begun the deposition of defendant's witness, and then later sought further discovery upon showing a remaining need. Plaintiff did nothing about the witness, and even failed to appear at an important status call to make the point when the case was at its critical stage.
 
 
 11
 Plaintiff, citing Boyles v. Freeman, 21 Ill.App.3d 31, 315 N.E.2d 899 (1974), also complains that the policy cannot be voided because in preparing the second application she was assisted by the defendant's agent and the application was completed contrary to the information she gave. Plaintiff's defaults in the present case are well beyond the scope of Boyles. She does not claim that she fully disclosed her medical history to the defendant's agent then or on her prior application. For example she does not claim she disclosed the extensive and currently continuing back treatments by one of her doctors. That was itself sufficient to void the policy, but there was more as we have mentioned. We find plaintiff's arguments that defendant already fully knew her medical history in spite of what was omitted in her applications, or that defendant waived its right to assert this misrepresentation defense by issuing the policy and accepting premiums, to be totally baseless and without merit.
 
 
 12
 It is too late for plaintiff to argue here that defendant has no right to recision. The plaintiff knew when and why the case took an adverse turn for her. Her misrepresentations were developing as the critical issue. She was made aware by defense counsel that her misrepresentations would be the basis of a Motion for Summary Judgment seeking recision. She knew who the defendant's witness would be, but let her extension of time to depose him pass without action. When the case was resolved by summary judgment, there were no post-trial issues raised by plaintiff by motions in the district court. This meritless appeal bordering on the frivolous followed.
 
 
 13
 It is obvious from a review of this case what happened and why the district judge was correct to bring this case to its inevitable and just end.
 
 
 14
 AFFIRMED.
 
 ATTACHMENT
 
 15
 IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
 
 DISTRICT OF ILLINOIS EASTERN DIVISION
 
 16
 Aug. 1, 1989.
 
 
 17
 No. 88 C 8226.
 
 MEMORANDUM OPINION AND ORDER
 
 18
 Janet Bouvier ("Bouvier") filed this case in the Circuit Court of Will County against The Paul Revere Life Insurance Company ("Paul Revere") alleging breach of a disability income insurance contract. Paul Revere removed the case to this court. Jurisdiction is invoked under 28 U.S.C. Secs. 1332 and 1446. Paul Revere moves for summary judgment declaring the policy void. For the following reasons, the motion is granted.
 
 FACTS
 
 19
 On May 18, 1984, Bouvier submitted a written application to Paul Revere for a policy of individual disability income insurance. The application required Bouvier to answer questions about her medical and health history. Bouvier stated that she had been treated for whiplash and fibrocystic breast disease prior to 1984 but that she was "OK now" and had "no further problems." See Paul Revere's Statement of Material Facts, Appendix Exhibit 2. She identified the names and addresses of three doctors who had treated her for these conditions. She stated that she was not currently under treatment or taking medication. Bouvier signed the application attesting that the answers were true, complete and correctly recorded. Id.
 
 
 20
 Paul Revere subsequently required that Bouvier submit to a paramedic insurance examination. Paul Revere's Statement of Material Facts p 8. An examination was performed on June 11, 1984 by a Paul Revere paramed. Bouvier's Statement of Material Facts p 5. The paramedic allegedly asked Bouvier questions concerning her health history and recorded her answers. Bouvier stated that within the past five years, she had been treated only by Dr. Noel Bass. Paul Revere's Statement of Material Facts, Appendix Exhibit 1. Dr. Bass reportedly removed a cyst from each breast in February 1980 and 1981, but reported "all normal findings" in October 1983. Bouvier claims she reported she suffered from headaches and bladder infections but was advised that these were not serious health conditions. Bouvier's Statement of Material Facts p 5. Bouvier denied that she was currently under treatment or taking medication. Her signature appears at the bottom of the application. See Paul Revere's Statement of Material Facts, Appendix Exhibit 1.
 
 
 21
 On June 20, 1984, Paul Revere allegedly telephoned Bouvier's physician, Dr. Noel Bass, to verify her medical history. Bouvier's Statement of Material Facts p 6 and Exhibit 1. Dr. Bass confirmed Bouvier's treatment for fibrocystic breast disease. Id.
 
 
 22
 Paul Revere issued Bouvier individual disability income insurance policy number 2137792 ("the policy"), effective July 14, 1984. The policy insured Bouvier for loss due to injury or sickness to the extent of $2000 per month to age 65. Complaint p 2.
 
 
 23
 In January 1986, Bouvier claimed she became totally disabled due to a severe and permanent asthmatic condition that had developed over time due to continued exposure to tobacco smoke, fumes, and pollutants. Bouvier's Statement of Material Facts p 8. In her affidavit, Bouvier claims her disability is due not only to her asthmatic reaction to pollutants, but also to arthritis, and an ankle injury and spinal problems resulting from two auto accidents after the policy was issued. Bouvier Aff. p 8. Bouvier notified Paul Revere and provided proof of her disability on February 6, 1986. Complaint p 4.
 
 
 24
 In the course of approving Bouvier's claim, Paul Revere obtained a report of her treatment for respiratory conditions from Dr. Abilio Milo at the Porter Clinic. See Bouvier's Statement of Material Facts, Appendix Exhibit 2. Paul Revere approved Bouvier's claim and paid disability benefits of $2000 per month from January 17, 1986 to October 14, 1986, totalling $18,733.34. Id. at p 12; Paul Revere's Statement of Material Facts at p 14.
 
 
 25
 In October 1986, Paul Revere determined Bouvier was no longer totally disabled and discontinued making payments. Id. at p 15. On August 24, 1988, Bouvier filed a complaint in the Circuit Court of Will County seeking resumption of her claim payments and a judicial declaration that she is totally disabled. On September 27, 1988, Paul Revere removed the case to this court.
 
 DISCUSSION
 
 26
 A party is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Only disputes over facts that might affect the outcome of the suit under governing law will preclude entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1985). Mere denials unaccompanied by statements of any facts admissible in evidence are not sufficient to raise a genuine issue of fact. First Nat. Bank Co. Etc. v. Insurance Co., 606 F.2d 760, 768 (7th Cir.1979).
 
 
 27
 For purposes of this motion, Paul Revere does not dispute that Bouvier is disabled. Paul Revere's reply at 2. It claims there is no genuine issue of fact that Bouvier's applications for coverage contained material misrepresentations regarding her medical and health history. Paul Revere maintains it would not have issued the policy to Bouvier on the terms given if she had fully and accurately disclosed her health conditions. It seeks to rescind the policy, to refund all premiums, and to recover the $18,733.34 paid on Bouvier's claims.
 
 
 28
 An insurance applicant has a duty to make a full and complete disclosure of all relevant information. Apolskis v. Concord Life Insurance Company, 445 F.2d 31, 35 (7th Cir.1971). A misrepresentation in an insurance application is a statement of fact that is untrue and that affects the risk undertaken by the insurer. See Weinstein v. Metropolitan Life Insurance Co., 389 Ill. 571, 577, 60 N.E.2d 207, 210 (1945). Misrepresentations in a written insurance application attached to or made part of the policy entitle the insurer to rescind the insurance contract where the misrepresentation:
 
 
 29
 [was] made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company.
 
 
 30
 Ill.Rev.Stat. ch. 73 Sec. 766.
 
 
 31
 Bouvier responded to questionnaires on her medical and health history in both the May 18, 1984 and June 11, 1984 applications. A copy of the June 11, 1984 application was attached to and made a part of the policy. Paul Revere's Statement of Material Facts p 10. Therefore, only misrepresentations contained in the June 11, 1984 application are actionable under Ill.Rev.Stat. ch. 73 Sec. 766.
 
 
 32
 In the June 11, 1984 application, Bouvier represented that she consulted one physician, Dr. Noel Bass, during the past five years. In February 1980 and 1981, she allegedly had a cyst removed from each breast. In October 1983, Bouvier claims she had a complete physical with EKG, chest x-ray, and blood and lab tests and reported "all normal findings." Paul Revere's Statement of Material Facts, Appendix Exhibit 1. She expressly denied having had or having been treated for any of the other listed conditions.
 
 
 33
 The record establishes that Bouvier in fact had suffered from or been treated for several other conditions within the previous two years. For example, Bouvier denied on her June 11, 1984 application that she ever had any known indications of or had been treated for any type of back or spinal trouble. Paul Revere's Statement of Material Facts, Appendix Exhibit 1 at 15(b). Medical records subpoenaed from Dr. Stephen Mahalik and claim records subpoenaed from Sentry Life Insurance Company reflect Bouvier received extensive treatment for back and spinal problems on sixty-six occasions between December 1982 and February 1984 prior to the completion of her June 11, 1984 application. Id. at p 34 and Appendix Exhibits 8, 11 and 4 at Dep.Exhibits 4, 18.
 
 
 34
 Bouvier claims that she stated in her May 18, 1984 application that she suffered from spinal problems and that she provided the names and addresses of two treating physicians. Bouvier Aff. p 15. Although the May 18 application states that she suffered whiplash in 1978, it further states that Bouvier was "OK now." See Paul Revere's Statement of Material Facts, Appendix Exhibit 2. Moreover, Bouvier subsequently contradicted this statement by stating in the June 11, 1984 application that she never had any known indication of, or been treated for, any type of back or spinal trouble. Id., Appendix Exhibit 1.
 
 
 35
 In the June 11, 1984 application, Bouvier also denied she ever suffered from chest pain, asthma, or any disease of the chest or lungs. Id. at 15(c) and (e). Records subpoenaed from Dr. Abilio Milo reflect Bouvier was treated or received medication from May 1, 1983 through December 12, 1985 for bronchitis. See Paul Revere's Statement of Material Facts, Appendix Exhibit 9 at J1. Records from Sentry Life Insurance Company indicate that Dr. Milo treated Bouvier for pneumonia and prescribed medication in May 1983. Id., Appendix Exhibit 4 at Dep.Exhibits 14, 16.
 
 
 36
 Bouvier claims the bronchitis and pneumonia reflected in her records refer to the same illness. She maintains she considered it an acute illness of short duration, not a disease. Bouvier Aff. p 16. The applicant cannot be the judge of the materialityof her health problems; she must disclose all information known to her and permit the insurer to determine its materiality. See Weinstein v. Metropolitan Life Ins. Co., 389 Ill. at 578; Apolskis v. Concord Life Ins. Co., 445 F.2d at 35.
 
 
 37
 In a questionnaire of her medical history taken at Silver Cross Hospital in January 1986, Bouvier stated that she had asthma as a child. See Paul Revere's Statement of Material Facts, Appendix Exhibit 10 at 11. In her affidavit, Bouvier denies she had asthma as a child and claims she was not diagnosed to be asthmatic until January 17, 1986. Bouvier Aff. p 16. She claims she circled that she had suffered from asthma as a child to indicate that she "had been diagnosed at some time as having asthma." Id. Bouvier maintains she currently is disabled by a severe and permanent asthmatic condition that developed over time. Bouvier's Statement of Material Facts p 8.
 
 
 38
 Bouvier also denied on her June 11, 1984 application that she ever had indication of or had been treated for headaches. See Paul Revere's Statement of Material Facts, Appendix Exhibit 1 at 15(g). Records subpoenaed from Dr. N. Bass contained Bouvier's complete medical history, dated October 20, 1983. Bouvier allegedly reported headaches over the past ten years that last for an entire day, are accompanied by decreased vision, visual aura and nausea, and that occur two to three times per week. Id., Appendix Exhibit 7 at M12. Within the preceding six months, Bouvier reported approximately twenty, one-minute attacks of vertigo and faintness. Id. Bouvier received a prescription for migraine headaches from Dr. Schoenheider on March 22, 1984, less than three months prior to completion of her June 11, 1984 application. Id., Appendix Exhibit 4 at Dep.Exhibit 6.
 
 
 39
 Bouvier denies she made misrepresentations in connection with her June 11, 1984 application. She claims that the application was completed by a nurse/paramedic who acted as an agent for Paul Revere. Bouvier's answer to motion for summary judgment at 5. She maintains she was not asked the exact questions contained in the June 11, 1984 application. Bouvier Aff. p 5. She claims the paramedic asked her specific questions about specific diseases and recorded only the information the paramedic deemed relevant. Id. Bouvier purportedly discussed various ailments not noted on the application, including the fact that she regularly suffered from headaches and had several bladder infections. Bouvier's answer to motion for summary judgment at 5.
 
 
 40
 Bouvier's claim that she disclosed all information concerning her medical and health conditions is not supported by the evidence. Her claim is substantiated only by her own self-serving affidavit. Moreover, she presumably had an opportunity to review the answers to the June 11, 1984 application before she signed it. She cannot escape responsibility for the untruthful and misleading answers in the June 11, 1984 application on the ground that the proper inquiries were not made.
 
 
 41
 To the extent that the application contains any misrepresentations, Bouvier argues they are not material. She claims the issue of whether a misrepresentation is material is a question of fact for the jury. Bouvier's answer to motion for summary judgment at 6; Bouvier's memo. at 4.
 
 
 42
 The materiality of a misrepresentation to an insurer's risk may be established by an employee or an underwriter of the insurance company who testifies to his own experience or the practices of the industry. Allender v. Guardian Life Ins. Co. of America, 592 F.Supp. 541, 543 (N.D.Ill.1984), aff'd, 789 F.2d 920 (7th Cir.1986), citing Stone v. Those Certain Underwriters at Lloyds, 81 Ill.App.3d 333, 401 N.E.2d 511 (5th Dist.1980). Paul Revere submits the affidavit of its underwriter, Charles Havens, to establish that Bouvier's misrepresentations were material. See Paul Revere's Statement of Material Facts, Appendix Exhibit 6. Havens stated that had Bouvier's pre-application medical and health history relating to her chronic back and spinal conditions been disclosed, Paul Revere would have rejected Bouvier's application. Havens Aff. paragraphs 14, 20, 26. He further stated that if Bouvier had disclosed her history of asthma, pneumonia and bronchitis, Paul Revere at most would have offered to issue a disability income insurance policy at 120% of the premium actually paid by Bouvier, with a limit of sixty days coverage for disability caused by bronchitis or asthma. Id. at p 21. Similarly, if Bouvier had disclosed treatment for migraine headaches, Paul Revere would have excluded disability coverage for migraines or headaches. Id. at p 22.
 
 
 43
 Bouvier submits her own affidavit to refute the affidavit of Charles Havens. To rebut the claim that the omissions or misrepresentations in her June 11, 1984 application were material to Paul Revere's risk, Bouvier argues that Paul Revere did not rely on the responses in the application. Bouvier Aff. p 7. She maintains that Paul Revere investigated her medical condition prior to issuing the policy and before making payments on her claims. Id. at paragraphs 6, 9. She contends that any misrepresentations would have been discovered during inquiries to her physicians. Id. at p 12.
 
 
 44
 Bouvier's June 11, 1984 application represented only that Dr. Bass had removed cysts from her breasts in 1980 and 1981. Paul Revere subsequently obtained confirmation from Dr. Bass of Bouvier's treatment for fibrocystic breast disease. See Bouvier's Statement of Maerial Facts, Exhibit 1. Dr. Bass did not provide Paul Revere with any other material information regarding Bouvier's medical and health history. See Paul Revere's Supplemental Statement of Material Facts p 5. Bouvier's negative responses to all other questions could not have put Paul Revere on notice of any other conditions. An insurance applicant has a duty to act in good faith, and an insurer is entitled to truthful responses so that it may determine whether the applicant meets its underwriting criteria. Garde by Garde v. Country Life Ins. Co., 147 Ill.App.3d 1023, 498 N.E.2d 302, 308 (4th Dist.1986). Under Illinois law, an insurance company need not make any independent investigation and may rely on the truthfulness of answers contained in an insurance application if there is nothing to put it on notice that certain answers may be false. Apolskis v. Concord Life Ins. Co., 445 F.2d at 36.
 
 
 45
 Despite denying that she had any back or spinal problems in the June 11 application, Bouvier claims that her affirmative response to the question in the May 18 application put Paul Revere on notice. Bouvier Aff. p 15. However, the May 18 application stated that Bouvier had suffered from whiplash in 1978 but that everything was "OK now." This did not give Paul Revere notice of the sixty-six treatments for back and spinal problems between December 1972 and February 1984. Bouvier's denial or omission of information concerning her current back and spinal condition constitutes a material misrepresentation that affected Paul Revere's acceptance of the risk. It is unnecessary to consider the materiality of other misrepresentations or omissions.
 
 Bouvier's Defenses
 
 46
 Bouvier contends that Paul Revere waived its right to contest statements made in her application because it has continued to accept payment for premiums on the policy. Bouvier's Statement of Material Facts p 26. A waiver is an intentional relinquishment of a known right. Lempera v. Karner, 79 Ill.App.3d 221, 398 N.E.2d 224, 225 (1st Dist.1980). To find a waiver by an insurer it must be shown that the insurer had knowledge of all material facts before it acted. Kennedy v. Hospital Service Corp., 118 Ill.App.3d 584, 455 N.E.2d 206, 208 (1st Dist.1983).
 
 
 47
 Bouvier fails to proffer any facts to raise a genuine issue that Paul Revere waived any right. This case was filed in August 1988. Paul Revere claims to have learned of the misrepresentations in Bouvier's application through discovery. See Paul Revere's memo. at 7-8. Paul Revere filed its motion for summary judgment, statement of material facts, and supporting documents on June 1, 1989. Bouvier cannot establish that Paul Revere knew of any material misrepresentation in the applications at any earlier date. Bouvier's contention that Paul Revere was aware of her entire medical history no later than May 1986 when it investigated her claim for disability benefits is not supported by the facts. Paul Revere continued to pay Bouvier's disability benefits through October 14, 1986. See Bouvier's Statement of Material Facts paragraphs 12, 27. The submission of cancelled checks for premiums through April 10, 1989 is insufficient to raise the issue of waiver.
 
 
 48
 Bouvier also contends Paul Revere is barred from challenging any statements in her application based upon a two-year incontestability clause in her policy. Bouvier's memo. at 1. The clause provides in relevant part:
 
 
 49
 After Your Policy has been in force for two years, excluding any time You are Disabled, We cannot contest the statements in the application.
 
 
 50
 Paul Revere's Statement of Material Facts, Appendix Exhibit 1 at 14, Part 10.2a.
 
 
 51
 The policy took effect July 14, 1984. Bouvier maintains she became totally disabled on January 17, 1986 and continues to be disabled to date. Bouvier Aff. p 8. Therefore, the policy has not been in force for two years excluding periods of disability.
 
 Rescission
 
 52
 Paul Revere maintains it is entitled to void the policy ab initio. It seeks to recover the $18,733.34 paid to Bouvier and offers to refund all premiums paid by Bouvier. Paul Revere's memo. at 9.
 
 
 53
 Where an applicant for an insurance policy makes a misrepresentation that materially affects the insurer's acceptance of the risk, the insurer may rescind the policy and refuse to pay any benefits. See Logan v. Allstate Life Ins. Co., 19 Ill.App.3d 656, 312 N.E.2d 416 (2d Dist.1974). In an action for rescission, the aggrieved party is entitled to recover property conveyed prior to the breach. See Lees v. Akshun Mfg. Co., 205 F.2d 577, 581 (7th Cir.1953) (applying Illinois law).
 
 
 54
 Because Bouvier made a material misrepresentation in her application, Paul Revere is entitled to recover all disability claims paid under the policy. To date, Paul Revere has paid claims totalling $18,733.34. Paul Revere's Statement of Material Facts p 14. Bouvier is entitled to recover all premiums paid to Paul Revere under the policy.
 
 CONCLUSION
 
 55
 Paul Revere's motion for summary judgment is granted. Judgment is entered in favor of Paul Revere and against Janet Bouvier in the amount of $18,733.34, less the total amount of premiums paid by Bouvier under policy number 2137792. The policy is declared void.
 
 
 56
 /S/Suzanne B. Conlon
 
 United States District Judge