2020 IL App (2d) 191075-U
No. 2-19-1075
Order filed November 19, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| HARTFORD FIRE INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-MR-1854 |
| SERENITY LED and CHRISTOPHER SASS, | ) ) ) | Honorable Mitchell L. Hoffman, |
| Defendants-Appellants. | ) | Judge, Presiding. |

_____

JUSTICE HUDSON delivered the judgment of the court.
Justices Bridges and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Trial court properly granted summary judgment in favor of plaintiff where no dispute of material fact existed regarding plaintiff's right to rescind insurance contract based on intentional misrepresentations made by and on behalf of defendants when applying for policy.

¶ 2                                    I. INTRODUCTION

¶ 3    Plaintiff, Hartford Fire Insurance Company, filed a two-count complaint against defendants, Serenity LED and Christopher Sass. The first count, which is not at issue here, sought a series of declarations concerning an insurance policy issued by plaintiff to defendants. The

second count sought to rescind the policy based on several alleged misrepresentations made by defendants when they procured the policy. The trial court granted summary judgment in favor of plaintiff. For the reasons that follow, we affirm.

¶ 4                                                     II. BACKGROUND

¶ 5        In November 2016, defendant Serenity applied for and was issued a workers' compensation insurance policy. The policy was issued by plaintiff. On December 23, 2016, defendant Sass slipped on a patch of ice in the parking lot of Bill Kay Ford in Midlothian. The next day, he notified his agent, Owen Costanza, of his injury.

¶ 6        The policy at issue in this case states that it "applies to bodily injury by accident or bodily injury by disease." It imposes on the insurer (plaintiff) a duty to "pay promptly when due the benefits required of [the insured] by the workers compensation law." The policy states that Illinois law is controlling.

¶ 7        Sass, who is the owner of Serenity, applied for the policy. Costanza actually submitted the application. In making the application, defendants made a number of representations, which were admitted in defendants' response to plaintiff's interrogatories and defendants' amended answer to plaintiff's complaint. First, defendants admitted that the application stated that Serenity's business address was 27036 West Miller Road in Barrington, which is also Sass's residential address. Second, the application stated that Serenity was an electrical equipment distributor. Third, it stated that Serenity's payroll was $55,000 for two employees, one salesperson and one clerical employee. Fourth, defendants represented to plaintiff that "no installation service and/or repair work was performed by employees [or] subcontractors." Fifth, according to the application, defendants'

income came from the sale of LED light bulbs, which were drop shipped[1] to customers. Sixth, defendants admitted that they were aware of the nature of Serenity's business. Seventh, defendants represented that Serenity's business "did not include the installation of LED products." Eighth, defendants admitted that they "knew that the employments for which coverage was sought included the use of ladders and lifts in the installation of LED products" and that Serenity, through Sass, "indicated in the Application that the employments for which coverage was sought by [Serenity] did not include use of ladders and lifts in the installation of LED products."

¶ 8 Based on these responses, plaintiff moved for summary judgment based on its recission count. In support, plaintiff submitted the affidavit of Bill Kay. Kay averred that on November 9, 2016, Bill Kay Ford made a $2,500 deposit with Serenity "to modify light fixtures and install LED lights in various light poles on the Bill Kay Ford dealership property located at 14633 S. Cicero Avenue, Midlothian, Illinois" (where the accident occurred). Attached as exhibits to the affidavit were an invoice issued by Serenity to Bill Kay Ford and a copy of a check for a final payment on the invoice. The invoice, which is dated January 31, 2017, states that it is for the installation of parking lot lights and the removal of flood lights. It includes a charge for labor. The affidavit also states that the lights Serenity installed at Bill Kay Ford "were not purchased from Serenity LED, Inc."

---

[1] "Drop shipping" is defined as " a retail fulfillment method where a store doesn't keep the products it sells in stock. Instead, when a store sells a product using the dropshipping model, it purchases the item from a third party and has it shipped directly to the customer. As a result, the seller doesn't have to handle the product directly." *What is Dropshipping?*, https://www.shopify.com/blog/what-is-dropshipping (last visited October 15, 2020).

¶ 9      Plaintiff also attached a mechanic's lien to its motion for summary judgment. The lien was by Serenity and against WJK South Cicero, LLC (apparently the legal name of the entity that operates Bill Kay Ford). The lien is for the "[i]nstallation of parking lot LED lights and electrical work." It states that all work had been substantially completed.

¶ 10     Pursuant to Local Rule 2-1.04 (19th Judicial Cir. Ct. R. 2-1.04 (October 24, 2016)), plaintiff submitted a proposed statement of undisputed fact and defendants submitted a response. In it, defendants admitted that when Serenity applied for the insurance policy at issue here, "it represented that [it] was an electric equipment distributor with two employees who were engaged in the work of salespersons or clerical office employees." Defendants admitted that Serenity further represented to plaintiff that "it specifically denied performing installation services." Defendants also admitted that when Serenity applied for the policy, it described its operations as the sale of LED lightbulbs" and further that lightbulbs were drop shipped directly to customers. Defendants acknowledged that they provided an estimate to Bill Kay Ford on October 27, 2016, for the installation of customer-supplied products and that the lights that they ultimately installed were not supplied by Serenity. Defendants also admitted that they accepted a deposit from and submitted invoices to Bill Kay Ford for the installation of LED lights and that the mechanic's lien they perfected against Bill Kay Ford related to the installation of lighting and electrical work.

¶ 11     Defendants' response also contains the following admission:

     "Defendants admit that at the time SERENITY LED applied for and was issued HARTFORD Workers' Compensation Policy no. $3 WEC IC 3127, SERENITY LED, through the Defendant, CHRISTOPHER SASS, knew that the employments for which coverage was sought included the use of ladders and lifts in the installation of LED products and indicated in the Application, that the employments for which coverage was

> sought by SERENITY LED did not include use of ladders and lifts in the installation of
>
> LED products."

Finally, defendants admitted that Sass "knew the nature of the actual business" Serenity was engaged in, the nature of the work performed by Serenity employees, and the number of persons employed by Serenity.

¶ 12    Plaintiff also relied upon the affidavit of Zachary Wong, an underwriter employed by plaintiff. Serenity's application is attached to the affidavit as an exhibit. The application contains the misrepresentations described above, including that no installation work is performed and that Serenity is involved only in the sale of LED lightbulbs, which are drop shipped to customers. It also contains the following question: "Are there states or operations of the Named Insured that are being excluded from the submission?" Serenity indicated that there were not. It further states that Serenity has one location. Wong averred that he approved Serenity's application based on the representations in the application. He further averred that had he known the true nature of Serenity's business—specifically that Serenity was involved in the installation of electrical equipment and other electrical work—he would not have approved the policy.

¶ 13    Defendants raise a number of additional factual matters. However, they are not pertinent to the issue of recission. We will not set them forth here but will address them below.

¶ 14    The trial court found that no material issue of fact existed as to whether defendant Sass intentionally misrepresented the business of Serenity when he procured the workers' compensation policy from plaintiff. Accordingly, it held that plaintiff was entitled to rescind the policy. Plaintiff then voluntarily dismissed the balance of its claims, and this appeal followed.

¶ 15                               III. ANALYSIS

¶ 16 Defendants now contend that the trial court erred in granting summary judgment in favor of plaintiff. As this appeal comes to us following a grant of summary judgment, review is *de novo*. *Collins v. St. Paul Mercury Insurance Co.*, 381 Ill. App. 3d 41, 45 (2008). Summary judgment is warranted if the pleadings, admissions, depositions, and affidavits establish that no issue of material fact exists and that movant is entitled to judgment as a matter of law. *Rosenberger v. United Community Bancshares, Inc.*, 2017 IL App (1st) 161102, ¶ 22. However, it is a drastic remedy, so it may only be applied if the movant's right to judgment is clear and free from doubt. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12. In ruling on a summary judgment motion, a court must construe the record strictly against the movant and liberally in favor of the party opposing the motion. *Rosenberger*, 2017 IL App (1st) 161109, ¶ 22. Where the evidence can lead to more than one reasonable inference, the court must adopt the conclusion most favorable to the opponent of the motion. *Id.* A reviewing court will reverse a grant of summary judgment only if it determines an issue of *material* fact exists. *Quality Lighting, Inc. v. Benjamin*, 227 Ill. App. 3d 880, 884 (1992).

¶ 17 At issue here is whether plaintiff established that no issue of material fact existed regarding whether it was entitled to rescind the policy it issued to defendants. Pertinent here is section 154 of the Illinois Insurance Code (Code) (215 ILCS 5/154 (West 2016)), which is titled "Misrepresentations and false warranties" and provides, in pertinent part, as follows:

No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor. No such misrepresentation or false warranty shall

defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company." This section sets forth a two-pronged test for determining whether an insurance policy may be rescinded. *Illinois State Bar Ass'n Mutual Insurance Co. v. Law Office of Tuzzolino & Terpinas*, 2015 IL 117096, ¶ 17. The statement forming the basis for rescission must (1) be false and (2) be made with either actual intent to deceive or be material to the acceptance of risk or hazard assumed by the insurer. *Id*. Defendants' admissions that Sass knew the nature of Serenity's work including that it involved the use of ladders and lifts coupled with the admissions that he denied that Serenity was involved in installation work and that it did not use ladders and lifts easily establishes the falsity of the statements made in the application. Parenthetically, given that the statute applies to misrepresentations "made by the insured or in his behalf" (215 ILCS 5/154 (West 2016)), it is of no moment that the application was actually submitted by Costanza. Thus, resolution of this appeal turns on the second prong of the test for recission set forth in section 154.

¶ 18    On this question, the trial court determined, correctly, that no issue of material fact existed that Sass intentionally misled plaintiff when he applied for the insurance policy. We are cognizant that questions of intent are often not amenable to resolution via summary judgment. *Borchers v. Franciscan Tertiary Province of Sacred Heart, Inc.*, 2011 IL App (2d) 101257, ¶ 30. Nevertheless, summary judgment remains an appropriate remedy where no issue of material fact exists on the issue. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992). If undisputed facts give rise to but a single inference, summary judgment is appropriate. *Gordon v. Oak Park School District No. 97*, 24 Ill. App. 3d 131, 135 (1974).

¶ 19    Here, defendants admitted that, at the time they completed the application for insurance, Sass was aware that Serenity's work involved the use of ladders and lifts and that they indicated

otherwise in the application. They also admitted that Sass was aware of the nature of Serenity's business. Serenity was, in fact, entering into a contract with Bill Kay Ford to install LED lighting at the time the application was made. Nevertheless, in the application, Sass was asked: "Provide a full description of operations of the insured's business. Include specifics about services provided and how income is generated." In response, Sass described Serenity's business as "Sales of LED light bulbs. They only carry samples. The lights are drop shipped directly to the customer [*sic*] place of business." The application also states that Serenity had two employees, a salesperson and a clerical employee. In response to a question asking, "Is any installation, service and/or repair work performed by employees or subcontractors," Sass replied "No."

¶ 20    The comprehensive nature of the misrepresentations made by Sass leads to a single conclusion—they were intentional. This is not a situation where there was a single, isolated omission. Rather, the same misleading information was presented in multiple ways. For example, Sass stated that no installation work was performed and also that Serenity's only employed people in a clerical or sales capacity. Nor was this a situation where Sass answered something, albeit incorrectly, to the best of his knowledge and belief. Defendants flatly admitted that Sass was aware of the nature of Serenity's business and that he did not disclose it to plaintiff. No inference is possible other than that Sass intentionally misled plaintiff. *Cf. Golden Rule Insurance Co. v. Schwartz*, 203 Ill. 2d 456, 467 (2003) (quoting *Skinner v. Aetna Life & Casualty*, 804 F.2d 148, 150 (D.C. Cir. 1986) (" 'What the applicant in fact believed to be true is the determining factor in judging the truth or falsity of his answer, but only so far as that belief is not clearly contradicted by the factual knowledge on which it is based.' "); *Conti v. Health Care Service Corp.*, 378 Ill. App. 3d 202, 210 (2007) ("We agree with the trial court and find that no reasonable person could construe Patricia's multiple doctors' visits to be anything other than a physical examination under

the plain and ordinary meanings of the terms 'checkup' and 'consultation.' "). As such, summary judgment was appropriate in this case.

¶ 21 Defendants raise a number of arguments in an effort to avoid this result. Defendants initially assert that the issue is "whether Defendant Christopher Sass is entitled to coverage under Plaintiff's Workers' Compensation Policy." This is not actually the issue in this case. Since plaintiff's action is for recission, the terms of the policy are not at issue; rather, the question is whether plaintiff was entitled to rescind the policy such that it was not effective at the time of Sass's accident. See *Newton v. Aitken*, 260 Ill. App. 3d 717, 719 (1994) ("The remedy of rescission contemplates voiding the contract as if it had never existed, returning the parties to their pre-contract status"). The dispositive question in this case, as we explain above, is whether defendants committed an intentional or material representation such that plaintiff is entitled to void the contract.

¶ 22 Defendants' assertion that plaintiff's policy was in place, with premiums paid, at the time of the accident is beside the point, as we and the trial court have determined that plaintiff is entitled to void the policy. Similarly, how the accident occurred is not relevant. See *Campbell v. Prudential Insurance Co. of America*, 15 Ill. 2d 308, 313 (1958) ("That the insured did not die from the affliction with respect to which information was withheld does not affect the materiality of the misrepresentations."). Defendants contend that the accident occurred at ground level and did not involve the installation of lighting. They further point out that the affidavit of Bill Kay does not state that Sass was installing lights when he was injured or that he was on a ladder or lift. However, since the policy is void, there is no coverage regardless of how the accident occurred.

¶ 23 Defendants point out that on January 24, 2017, they inquired, via an insurance agent, as to what the cost of adding liability insurance for electrical and installation work would be. They also

asked what the rate would be to add such work to the workers' compensation policy. In response, plaintiff stated that it was "not aware of the installation exposure when [the policy] was written." Plaintiff did not immediately cancel the policy and ultimately allowed it to remain in place until August 11, 2017. Defendants assert that this raises a triable issue of fact. That is, since plaintiff did not take steps to immediately disavow the policy, they arguably did not regard it as material. However, to the extent that creates an issue of fact, it is pertinent only to materiality. We and the trial court both relied on the intent prong of the test set forth in section 154 of the Code (215 ILCS 5/154 (West 2016)) in resolving this case.

¶ 24    Defendants point out that Wong's affidavit is silent as to defendants' intent. As explained above, there is other evidence in the record relevant to that issue—most notably defendants' admissions. Defendants also complain the Wong never averred that Sass was untruthful. This was unnecessary, as the falsity of Sass's representations is established by defendants' admissions as well.

¶ 25    The trial court correctly determined that having found that Sass intentionally misrepresented facts in the application for insurance, it need not consider the representation's materiality. The plain language of section 154 compels this conclusion: "No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive *or* materially affects either the acceptance of the risk or the hazard assumed by the company." (Emphasis added.) 215 ILCS 5/154 (West 2016). The statute is plainly worded in the disjunctive, and, of course, that plain language is the best indicator of the legislature's intent (*Allstate Insurance Co. v. Menards, Inc.*, 202 Ill. 2d 586, 591 (2002)). Indeed, our supreme court has explained, "The statute establishes a two-prong test to be used in situations where insurance policies may be voided: the statement must be false and the false statement must

have been made with an intent to deceive *or* must materially affect the acceptance of the risk or hazard assumed by the insurer." (Emphasis added.) *Golden Rule Insurance Co.*, 203 Ill. 2d at 464.

¶ 26    In their reply brief, defendants argue that this construction of the statute leads to an absurd result. Of course, statutes should not be construed in such a manner. *Mulligan v. Joliet Regional Port District*, 123 Ill. 2d 303, 312-13 (1988). Defendants assert that it is absurd that if a court determines a misrepresentation is intentional, it need not inquire into its materiality, as this would result in an insured losing coverage for a nonmaterial misrepresentation. We, however, see nothing inherently absurd about the legislature choosing not to protect an insured who intentionally misleads an insurer, regardless of the nature of the misrepresentation. More importantly, this is not an open question.

¶ 27    In *Campbell,* 15 Ill. 2d 308, our supreme court addressed this precise issue. Discussing section 154, the court noted that occasionally, "the disjunctive 'or' has been read as the conjunctive 'and.' " *Id.* at 311. It emphasized that this is permissible "only when a literal reading is inconsistent with an apparent legislative purpose." *Id.* The court continued:

> "It is argued here that the purpose of section 154 is to benefit the insured and not the insurer. And on that basis it is contended that the General Assembly could not have intended that a material misrepresentation innocently made, or an immaterial but intentional misrepresentation, would defeat recovery." *Id.* at 311-12.

After reviewing the history of various common-law rules concerning false warranties and misrepresentations in insurance contracts, the court held, "We see no reason why section 154 should not be read as it is written, in the disjunctive." *Id.* at 313. This holding was announced in 1958. In 1996, section 154 was amended (see Pub. Act 89-413, eff. June 1, 1996), indicating

legislative approval of this construction (See *People v. Antoine*, 286 Ill. App. 3d 920, 925 (1997) ("When the legislature amends a statute but leaves unchanged provisions which have been judicially construed, the unchanged provisions ordinarily retain the construction given prior to the amendment. [Citation.] The legislature is presumed to know of judicial interpretation of statutes; thus, its inaction suggests agreement with the judicial interpretation. [Citations.]")). Thus, in light of the supreme court's authoritative construction of section 154 in *Campbell*, defendants' argument that the construction adopted by the trial court is absurd necessarily fails.

¶ 28    Defendants further contend that the workers' compensation policy simply did not cover installation work, so there was no misrepresentation. In turn, they assert, since Sass's injury did not involve installation work, it was covered by the policy. We initially note that this is inconsistent with defendants' representation on the application for insurance that there were no "states or operations of the Named Insured that are being excluded from the submission."

¶ 29    Moreover, defendants argument belies a failure to understand how a workers' compensation policy functions. The policy states that plaintiff "will pay promptly when due the benefits required of you by the workers compensation law." It states that Illinois law is controlling. Illinois law, specifically section 4(a)(3) of the Illinois Workers' Compensation Act (Act) (820 ILCS 305/4(a)(3) (West 2016)), provides, " Every policy of an insurance carrier, insuring the payment of compensation under this Act shall cover all the employees and the entire compensation liability of the insured." 820 ILCS 305/4(a)(3) (West 2016). In certain circumstances, coverage may be split between multiple carriers; however, the Act limits this option by stating that " the entire compensation liability of the employer to employees working at or from one location shall be insured in one such insurance carrier or shall be self-insured." *Id*. It further states, "Any provisions in any policy, or in any endorsement attached thereto, attempting to limit or modify in

any way, the liability of the insurance carriers issuing the same except as otherwise provided herein shall be wholly void." *Id.* Serenity operates out of one location. Therefore, in accordance with the provisions of the Act, plaintiff could not exclude certain aspects of defendants' operations from the policy. In *Illinois Insurance Guaranty Fund v. Virginia Surety Co., Inc.*, 2012 IL App (1st) 113758, ¶ 20, the first district explained:

> "We have also considered the terms of section 4(a)(3) of the Act. This portion of the workers' compensation statute requires that an employer's policy 'cover all the employees and the entire compensation liability of the insured,' or authorizes the employer to split coverage between two insurers or between one insurer and self-insurance, provided 'the entire compensation liability of the employer to employees working at or from one location shall be insured in one such insurance carrier or shall be self-insured.' 820 ILCS 305/4(a)(3) (West 2000). Section 4(a)(3) also voids an insurance carrier's attempt to otherwise limit or modify its liability. 820 ILCS 305/4(a)(3) (West 2000). What this means is that an employer and its insurer cannot selectively omit an employee or employees from the coverage of a workers' compensation policy."

Therefore, plaintiff could not exclude employees engaged in certain types of work from the coverage it extended to Serenity. Pursuant to Illinois law, then, once plaintiff issued the policy, it covered all of defendants' workers' compensation liability (defendants' argument that the known-loss doctrine (see *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 103 (1992) somehow resulted in installation work being excluded from the policy is not viable in light of section 4(a)(3) of the Act). Defendants' claim that there simply was no coverage for installation work and that the policy was otherwise effective is not well-taken.

¶ 30    Finally, we note that, at oral argument, defendants suggested that they made no misrepresentations when applying for the policy because any installation work would be performed by subcontractors.  However, we also note that liability under the Act can extend from a contractor to the employees of a subcontractor in certain circumstances.  See 820 ILCS 305/1(a)(3) (West 2016).  Hence, assuming, *arguendo*, that Serenity would perform all its installation work with subcontractors, this would not necessarily limit plaintiff's liability as it pertained to such work.  Moreover, in the response required by Local Rule 2-1.04, defendants admitted representing that "No installation service and/or repair work was performed by employees [or] subcontractors."  Thus, defendants apparently misrepresented this aspect of its operation as well.  Whether plaintiff exclusively employed subcontractors to perform installation work is simply not a material issue of fact that would preclude summary judgment in favor of plaintiff.

¶ 31                                    IV. CONCLUSION

¶ 32    In light of the foregoing, we affirm the trial court's grant of summary judgment in favor of plaintiff.

¶ 33    Affirmed.